*W. L. Davidson*, Assistant Attorney General, for the State.

Opinion delivered December 10, 1887.

No. 2592.

EX PARTE R. D. BELL.

1. LIQUOR TRAFFIC—SALOONS—LEGISLATIVE POWER.—The Legislature of this State has the power to absolutely prohibit drinking saloons, or saloons to be used in the pursuit of the liquor traffic.   This power carries with it the power to regulate the mode and manner, and the circumstances under which such saloons may be conducted, and to surround the right with such conditions, restrictions and limitations as it may deem proper.   Under this rule the act of the Legislature requiring the execution of a bond as a condition precedent to the granting of a license to conduct a drinking saloon is constitutional.   See the opinion on the question.

2. SAME.—Relator was charged with the offense of pursuing the occupation of a retail liquor dealer without having complied with the license laws.

The application for the writ of habeas corpus alleges the refusal of the relator to execute the bond required by law, and prays for relief upon the ground that the conditions of the bond are unconstitutional. *Held*, that the conditions of the bond can not be inquired into in a proceeding of this character, the bond never having been executed; and that the constitutionality of the conditions can be impeached only in a proceeding to enforce the penalties for their infraction.

ORIGINAL APPLICATION to the Court of Appeals for the writ of habeas corpus.

The entire case is disclosed in the opinion, which, though it was delivered on the fifteenth day of October, 1887, was held up by a motion for rehearing, which was not disposed of until the tenth day of December, 1887. The briefs of the counsel for the relator and the State are both able and exhaustive, but are necessarily too long for insertion in this report, and can not, in justice to their authors, be summarized.

*F. G. Morris*, for the relator.

*W. L. Davidson*, Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. Relator in this proceeding makes original application to this court for the writ of habeas corpus, alleging that he is illegally restrained of his liberty, and praying that upon a hearing of the same he may be discharged from custody. A succinct statement of the case is made in the brief of his counsel as follows:

" This is a prosecution under section 8 of an act of March 29, 1887 (Gen. Laws, 1887, pp. 58–61), amendatory of former acts regulating the sale of spirituous and other intoxicating liquors. The applicant being a seller of malt liquors, is charged by information by the county attorney of Travis county, with failing to post up in any conspicuous place in his place of business the license required to be issued by the county clerk, and is held in custody under a capias issued on this charge. The applicant admits the truth of the charge, but avers that he is illegally restrained in his liberty because there was no legal method provided by law whereby he could obtain any such license, and that he did not, for this reason, have any such license to post up. He maintains that while the law under which he is prosecuted provided for the issuance of such license, yet only upon conditions

which the Legislature had no constitutional authority to require of him, to obtain whatever license the Legislature had a right to require him to take out before pursuing his occupation; that said law required him to give a bond, with sureties to be approved by the county judge, in the penal sum of five thousand dollars, with numerous conditions, and forbid the county clerk from issuing said license, and the citizen from pursuing said occupation, unless said bond was given. He believes the Legislature had no constitutional authority to require said bond, and that the law requiring the same is unconstitutional and void."

Objections to the bond are two fold; first, that it can not be required at all; and secondly, that the statutory conditions which it is required the bond shall contain are such as are not authorized, and are in violation of constitutional rights and guarantees.

Now, it is to be noted that applicant has never given the bond, and is not seeking relief from the enforcement of penalties for its violated conditions or any one of them. His refusal absolutely to give the bond is the cause of his troubles.

We do not propose to enter upon a discussion of the liquor traffic in its relations to society and to government, because, in our view of the case here presented, such discussion is unnecessary. Nor do we propose to discuss the scope, extent and purpose of "local option," as provided in our Constitution and laws, nor how far it is to be considered exclusive as a prohibitory law in our State. In fact, we do not propose to discuss generally prohibitory legislation at all; because, in our view of the case, prohibition in one of its aspects alone is involved in the matters submitted, and that is the right and power of the Legislature to prohibit "drinking saloons" or saloons for the purpose of carrying on the liquor traffic.

Upon the question of this power in the Legislature we have found no difference of opinion, either in the decisions of courts or the standard authorities upon the subject. All agree that the Legislature has authority absolutely to prohibit them. If it can prohibit them entirely, then it follows inevitably as a corrollary that it can regulate the mode, manner and circumstances in and under which they may and shall be conducted and carried on, and may surround the right with such conditions, restrictions and limitations as may appear judicious.

Mr. Cooley says: "Within certain limits, which can not with accuracy be conclusively defined, the State must always be at

liberty to determine what are lawful employments, and to make others unlawful by forbidding them. * * * The assumption supporting such prohibitions is that the employments forbidden are hurtful and demoralizing; and they are prohibited in the exercise of legislative discretion which is subject to no extraneous control. Passing from the cases of prohibition, we find that the authority to regulate business embraces every class and variety of occupation, and that it may be exercised either in respect to the persons who may follow or be employed in the business, or as to the methods in which the business may be conducted, or both. * * * And where an occupation is peculiarly susceptible of abuse, it may be proper for the State to surround it with special restrictions, and require those who propose to enter upon it to take out special license and give security for good behavior, and to refuse altogether to issue licenses to persons of known bad character. Such regulations are usually made for the cases of hackmen, saloon keepers, proprietors of billiard halls, of theaters, shows, etc. The final test of what is a reasonable regulation must be found in the legislative judgment, unless the Constitution has provisions on the subject. What the Legislature ordains and the Constitution does not prohibit must be lawful." (Cooley on Torts, 276; Cooley's Const. Lim., 4th ed., 727–729, 713.)

Mr. Tiedeman says: "The suppression and control of the public disorders caused by the keeping of saloons constitute a heavy burden upon the tax payer, and the cause of them may be removed by a prohibitory law, or restrained and restricted in number by the imposition of a high license, according as it may seem best to the law making power. As matter of course, if the absolute prohibition of drinking saloons is constitutional, it would be lawful to subject them to more or less strict police regulations, where the regulations have for their reasonable object the prevention of some special evil which the prosecution of the trade threatens to the public." (Tiedeman on Lim. of Police Power, 309, 310.)

It can not be questioned but that one taking out a license to engage in the traffic of liquor can be required to keep an orderly house. He can be required to give bond with securities that he will keep an orderly house, and a violation of the conditions of his bond will not only subject him to a criminal prosecution but also to a civil action for damages on the part of those injured by his failure to comply with such conditions. This doctrine

was held by our Supreme Court in Goldsticker v. Ford, 62 Texas, 385, which was a suit to recover the penalty upon the bond of a retail liquor dealer under provisions of an act approved April 4, 1881 (Gen. Laws, Reg. Sess., 17th Leg., page 113), which in its fourth section, stipulating the conditions of said bond, is in many respects identical almost with the conditions complained of as provided for the bond in the case we are considering.

But there is another position taken in this case which demands our notice, and it is in substance that if it be conceded that the State has the right to regulate saloons, and as part of the regulation to require a bond as a condition precedent to the granting of the license and the prosecution of the business, still it has no right to and can not require a bond with conditions some of which, it is claimed, are invalid and unconstitutional. This is a question which we do not think applicant can be heard or permitted to raise, nor do we feel called upon to decide it on the petition for habeas corpus as presented in this proceeding. It is stated in the petition that applicant refuses to execute the bond, the main objection being that the State has no right to exact of him the execution of any bond. Now he may never execute the bond and the matters he complains of may never occur in so far as he is concerned. Under such circumstances we do not feel called upon to decide them until a case properly arises in which they are properly involved. Had applicant executed the bond, and its penalty was being sought to be enforced against him for a violation of some one or all its conditions, then, indeed, he might be in an attitude to claim that we should determine the validity of these conditions. On the case he here presents, he is not entitled to have these questions which may never arise, decided in advance of his execution of said bond.

Our conclusion is that upon his case as presented, applicant is not illegally restrained of his liberty, and his application for the writ of habeas corpus is therefore refused.

*Writ refused.*

Opinion delivered October 15, 1887.

Rehearing refused December 10, 1887.