148 U.S. 654
 13 S.Ct. 679
 37 L.Ed. 598
 UNITED STATES
v.
 ISAACS. April 10, 1893. April 10, 1893. Statement by Mr. Justice GRAY:
 
 [655]
 This was an action brought June 15, 1886, by the United States against Isaacs to recover additional duties upon 16 cases of cigarette paper, which he had imported and entered for consumption at the port of New Orleans in June, 1885, and had paid a duty of 15 per cent. ad valorem upon, as 'manufactures of paper,' under Schedule M, and which the collector, in liquidating the entry, held to be dutiable at 70 per cent. ad valorem as 'smokers' articles,' under Schedule N of the tariff act of 1883. At the trial before a jury the only controversy was under which description the merchandise was dutiable, upon the following facts agreed by the parties: 'The goods in question consisted of paper of a quality suitable for wrapping cigarettes filled with tobacco, and was cut into sizes fit for that use, and could have been used for that purpose, or in manufacturing cigarettes; but is not usually and in the ordinary course of trade put on the market for sale to smokers in the condition and form in which it was imported, but such paper is fitted for market and sale to smokers by being separated into lots or parcels of from one hundred to two hundred and fifty leaves of paper, after which one edge of the parcel of leaves is connected together with paste, glue, or some other adhesive cement, and afterwards cemented to a protective cover, making, when the manipulation is complete, what is known in commerce as 'cigarette books,' and from which the leaves are torn, one at a time, for the manufacture of cigarettes by smokers or manufacturers. It was, however, possible for any smoker to have taken the separate leaves of paper in form as imported, and used the same in making cigarettes, without having been first made up in books as above described. In fact, a part of this shipment and importation was sold directly to manufacturers of cigarettes in bulk for use in cigarette factories. And if the classification or rate of duty to be imposed is or can be in any
 [656]
 manner affected by the intention of the importer as to future use after importation, the defendant admits that at the time of importation and entry it was his intention to use said paper in the manufacture of cigarette books; and that, in fact, a large portion of said paper was so used by him after importation, and was by him sold in that form in the United States.' The United States requested the court to instruct the jury that upon the facts agreed the paper in question was a smoker's article, and liable to a duty of 70 per cent. ad valorem, and that they should find a verdict for the United States. But the court declined so to instruct the jury, and ruled that upon the facts agreed the goods should be classified as a manufacture of paper, and that the defendant, having paid a duty upon it as such, was entitled to a verdict, which was returned accordingly. The United States alleged exceptions, and on February 11, 1890, sued out this writ of error. Asst. Atty. Gen. Parker, for plaintiff in error. W. Wickham Smith, Charles Curie, and D. Ives Mackie, for defendant in error. djQ Mr. Justice GRAY, after stating the facts in the foregoing language, delivered the opinion of the court. It having been admitted by the parties at the trial that the paper in question in this case was made of a quality, and cut into a size, fit for wrapping cigarettes, and could, in the condition and form in which it was imported, be used by smokers to make their own cigarettes,—although it is not, in the usual and ordinary course of trade, put on the market for sale to smokers in that condition and form, but is usually prepared for sale to smokers by being made up into cigarette books, or else sold to manufacturers of cigarettes to be used in their factories,—it must, under the opinion just delivered in Isaacs v. Jonas, 13 Sup. Ct. Rep. 677, be held to come within the clause of the tariff act which imposes a duty of 70 per cent. ad
 [657]
 valorem on 'smokers' articles.' The jury having been instructed otherwise, the judgment must be reversed, and the case remanded to the circuit court, with directions to set aside the verdict, and to order a new trial. Giozza v. Tiernan [13SCt721,148US657,37LEd599] 13 S.Ct. 721 148 U.S. 657 37 L.Ed. 599 GIOZZA v. TIERNA, Sheriff.
 No. 185.
 April 10, 1893.
 Statement by Mr. Chief Justice FULLER:
 Francois Giozza was indicted in the criminal district court of Galveston county, Tex., upon the charge of having pursued the occupation of selling spirituous, vinous, and malt liquors, in quantities of less than one quart, without having first obtained a license therefor, and was tried, convicted, and fined in the sum of $450. He thereupon carried the case, by appeal, to the court of appeals of Texas,—the court of last resort in criminal cases, which affirmed the judgment. Subsequently he was arrested and held in custody by Patrick Tiernan, as sheriff of Galveston county, by authority of a capias issued by the criminal court, until the fine and costs were paid. Thereupon he applied for and obtained from the circuit court of the United States for the eastern district of Texas a writ of habeas corpus.
 The petition for the writ set forth that, by the laws of the state, no person is permitted to obtain a license to pursue the occupation of selling liquor until such person has given a bond, in the sum of $5,000, payable to the state of Texas, and containing, among other conditions, the condition, in substance, that the person giving such bond will not sell spirituous, vinous, or malt liquors, or medicated bitters capable of producing intoxication, to any person, after having been notified in writing, through the sheriff or other peace officer, by the wife or mother or daughter or sister of such person, not to sell to such person; that such bond may be sued on at the instance of any person so notifying, and aggrieved by the violation of such condition in said bond, and such person so notifying shall be entitled to recover the sum of $500 as liquidated damages for an infraction of such condition, etc. And petitioner charged that it was not competent for the legislature of the state of Texas to impose the condition above stated as a condition precedent to the obtaining of a license to pursue said occupation, and that the statute, in so far as it imposed such condition, operated as a denial of the equal protection of the laws, and deprived petitioner of his property without due process of law, and was repugnant to the fourteenth amendment of the constitution of the United States. Petitioner further alleged that, in order to obtain a license to pursue the occupation aforesaid, all persons desiring to engage therein are required to pay the occupation tax imposed thereon in advance, for a period not less than 12 months, and to pay the tax imposed by the state and by the commissioners' courts of the several counties, and by the cities and towns wherein such occupation is carried on, and to obtain a license from the county clerk of the county in which said occupation is carried on, for which license the sum of 25 cents is required to be paid, while all other persons pursuing all other occupations than the one pursued by petitioner are permitted by the laws of said state to pay the occupation tax on said occupations for each three months or quarterly, and no persons pursuing other taxable occupations than that pursued by appellant in cities and towns are required to pay the occupation tax imposed by such cities or towns as a prerequisite to obtaining a license to pursue such occupations, and no persons pursuing any taxable occupations other than that pursued by petitioner are required to obtain a license from such county clerk, or to pay therefor any sum.
 Petitioner charged that, under the laws aforesaid, he was denied the equal protection of the laws and deprived of his property without due process of law, and that those laws were repugnant to the constitution and laws of the United States.
 The petition further averred that the laws of the state, of which petitioner complained, had been pronounced and adjudged by the court of appeals to be valid laws, and not contrary to, and not inhibited by, the constitution of the United States.
 A copy of the indictment was annexed to the petition, wherefrom it appeared that Giozza was charged with unlawfully and willfully pursuing the occupation aforesaid without first having obtained a license, and that he had not paid the tax thereon, and was indebted to the state in the sum of $300 occupation tax, and to the county in the sum of $150 occupation tax; the commissioners' court of Galveston county having levied a tax on said occupation of one half the amount levied by the state thereon.
 The sheriff made due return that he held Giozza in his custody by the authority aforesaid, and attached thereto copies of the indictment, the capias, and the judgment of the court of appeals.
 Upon the hearing the circuit court adjudged that Giazzo was not unlawfully restrained of his liberty and remanded him to the custody of the sheriff, and thereupon brought the case to this court by appeal.
 The statute in question provided in its first section for the levy upon any person, firm, or association of persons engaged in the occupation of selling spirituous, vinous, or malt liquors, or medicated bitters, of an annual tax of $300 for selling such liquors or bitters in quantities less than one quart. Under the second section the commissioners' court had power to levy and collect taxes upon the occupations named, equal to one half of the state tax, and cities and towns were empowered to levy an additional tax. By the third section, all the taxes were required to be paid in advance for a period of not less than 12 months. The fourth section required the giving of a bond, as sufficiently stated in the petition. Under section 5, the county clerks in the several counties were authorized to issue licenses upon payment by the applicant of all occupation taxes levied by or nuder the act. The evidence of the payment of the taxes upon such application was the receipt of the county collector of taxes. For issuing the license the clerk was entitled to receive a fee of 25 cents for each license. 2 Sayles' Tex. Civil St. p. 124, art. 3226a.
 Article 110 of the Texas Penal Code reads: 'Any person who shall pursue or follow any occupation, calling, or profession, or do any act, taxed by law, without first obtaining a license therefor, shall be fined in any sum not less than the amount of the taxes so due, and not more than double that sum;' and by article 112 it is provided that any person prosecuted shall have the right, at any time before conviction, to have the prosecution dismissed, on payment of the taxes and costs of prosecution, the procuring of the license, etc. Willson, Crim. Tex. St. pt. 1, p. 47.
 Section 20 of article 16 of the constitution of Texas is as follows: 'The legislatur'e shall, at its first session, enact a law whereby the qualified voters of any county, justice's precinct, town, or city, by a majority vote, from time to time, may determine whether the sale of intoxicating liquors shall be prohibited within the prescribed limits.'
 Section 42 of the same article provides that 'the legislature may establish an inebriate asylum for the cure of drunkenness and reform of inebriates.'
 It was contended, also, that the court should take judicial notice that in 1887 a vote was taken upon a proposed amendment to the state constitution, prohibiting the manufacture, sale, and exchange of intoxicating liquors except for medical, sacramental, and scientific purposes, which was rejected by a large majority.
 J. M. Burroughs, for appellant.
 C. A. Culberson, for appellee.
 Mr. Chief Justice FULLER, after stating the facts in the foregoing language, delivered the opinion of the court.
 
 
 1
 As upon the face of the petition it appeared that the validity of the statute of which appellant complains was drawn in question in the state court on the ground of its requgnancy to the constitution of the United States, and the decision was in favor of its validity, the remedy which should have been sought was by writ of error. But since the circuit court held that petitioner was not illegally restrained of his liberty, and the contention was that the proceedings against him were wholly void because the statute regulating the sale of liquors was void, we will not dispose of the case on the narrower ground.
 
 
 2
 Irrespective of the operation of the federal constitution and restrictions asserted to be inherent in the nature of American institutions, the general rule is that there are no limitations upon the legislative power of the legislature of a state, except those imposed by its written constitution. There is nothing in the constitution of Texas restricting the power of the legislature in reference to the sale of liquor, and it is well settled that the legislature of that state has the power to regulate the mode and manner and the circumstances under which the liquor traffic may be conducted, and to surround the right to pursue it with such conditions, restrictions, and limitations as the legislature may deem proper. Ex parte Bell, 24 Tex. Ct. App. 428, 6 S. W. Rep. 197; Bell v. State, 28 Tex. Ct. App. 96, 12 S. W. Rep. 410. In these cases, and in the case before us, the law in question was held to be within the legislative power; and, so far as the state constitution is concerned, that conclusion is not re-examinable here. But it is contended that the act conflicts with the provisions of the fourteenth amendment,—that 'no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.'
 
 
 3
 The privileges and immunities of citizens of the United States are privileges and immunities arising out of the nature and essential character of the national government, and granted or secured by the constitution of the United States, and the right to sell intoxicating liquors is not one of the rights growing out of such citizenship. Bartemeyer v. Iowa, 18 Wall. 129.
 
 
 4
 The amendment does not take from the states those powers of police that were reserved at the time the original constitution was adopted. Undoubtedly it forbids any arbitrary deprivation of life, liberty, or property, and secures equal protection to all, under like circumstances, in the enjoyment of their rights; but it was not designed to interfere with the power of the state to protect the lives, liberty, and property of its citizens, and to promote their health, morals, education, and good order. Barbier v. Connolly, 113 U. S. 27, 31, 5 Sup. Ct. Rep. 357; In re Kemmler, 136 U. S. 436, 10 Sup. Ct. Rep. 930.
 
 
 5
 Nor in respect of taxation was the amendment intended to compel the state to adopt an iron rule of equality; to prevent the classification of property for taxation at different rates; or to prohibit legislation in that regard, special either in the extent to which it operates, or the objects sought to be obtained by it. It is enough that there is no discrimination in favor of one, as against another of the same class. Bell's Gap R. Co. v. Pennsylvania, 134 U. S. 232, 10 Sup. Ct. Rep. 533; Home Ins. Co. v. New York, 134 U. S. 594, 10 Sup. Ct. Rep. 593; Pacific Exp. Co. v. Seibert, 142 U. S. 339, 12 Sup. Ct. Rep. 250. And due process of law, within the meaning of the amendment, is secured if the laws operate on all alike, and do not subject the individual to an arbitrary exercise of the powers of government. Leeper v. Texas, 139 U. S. 462, 11 Sup. Ct. Rep. 577.
 
 
 6
 This statute affects all persons in Texas engaged in the sale of liquors, in exactly the same manner and degree. Whether considered as imposing restrictions upon the sale in the exercise of the police power of the state, or as levying taxes upon occupations under authority of the legislature in that behalf, petitioner was not aribtrarily deprived of his property, nor denied the equal protection of the laws.
 
 
 7
 Repeated decisions of this court have determined that such legislation is not in violation of the constitution. Crowley v. Christensen, 137 U. S. 86, 11 Sup. Ct. Rep. 13; Eilenbecker v. Plymouth Co., 134 U. S. 31, 10 Sup. Ct. Rep. 424; Kidd v. Pearson, 128 U. S. 1, 9 Sup. Ct. Rep. 6; Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. Rep. 273; Foster v. Kansas, 112 U. S. 201, 5 Sup. Ct. Rep. 8, 97.
 
 
 8
 The decree of the circuit court is affirmed.