Burket, J.
The statute in question is as follows :
“An Act
“Requiring persons, associations and corporations owning or operating street cars, to provide for the well being of the employes.
“Section 1. Be it enacted by. the General Assembhf of the State of Ohio, That every electric street car, other than trail cars, which are attached to motor cars, shall be provided during the months of November, December, January, February and March of each year, at the forward end, with a screen constructed of glass or other material, which shall fully and completely protect the driver or motorman or gripman, or other person stationed on the forward end guiding and directing the motor power by which they are propelled, from wind and storm.
“Section 2. Any person, agent or officer of any association or corporation violating the provisions of this- act, shall, on conviction, be fined in any sum not less than $25.00 nor more than $100, for each day each car belonging to and used by any such person, association or corporation is directed or permitted to remain unprovided with the screen required in section 1 of this act; and it is hereby made the duty of the prosecuting attorney of each county in this state to institute the *97 necessary proceedings to enforce the provisions of this act.
“Section 3. This act shall take effect and he in force on and after November 1, A. D. 1893.”
It is claimed that this act is in conflict with that part of section 26 of article II of the Constitution which provides that “All laws of a general nature shall have a uniform operation throughout the state. ’ ’
The act in question is clearly of a general nature, so that the only inquiry left is whether it is of uniform operation throughout the state. And here again it is equally clear that the law is in operation throughout every part of the state, uniformly as to all classes therein named. Is this sufficient? Soon after the adoption of the Constitution it was said by this court that the scope and purpose of this section was to prevent laws of a general nature from being in force in some counties and not in others, and these early cases have been followed ever since.
So held in Cass v. Dillon, 2 Ohio St., 607, 617; Lehman v. McBride, 15 Ohio St., 573; McGill v. State, 34 Ohio St., 228, 248 and Falk ex parte, 42 Ohio St., 638, 641.
In McGill v. State, 34 Ohio St., Boynton, J., on page 238, quotes what was said by Thurman, J., in Cass v. Dillon, 2 Ohio St., 617, and after referring to the debates of the constitutional convention, as to this section of the constitution, says:
“A general law, that land should not be sold upon execution for less than two-thirds of its appraised value was excluded from operation in several counties by local enactment. There were different laws in different counties respecting the descent and distribution of intestate property. Some *98 statutes defining legal offenses were excluded in their operation from a large part of the state; and different penalties for a violation of the same act, were, in some instances, provided for different localities. These are examples of the legislation, to prevent which in the future, and the mischief resulting from it, this provision of the Constitution was adopted. But no wider scope was claimed for it than to guard the future against the evils and inequalities resulting from legislation of the character complained of. ’ ’
Of late years an effort has frequently been made to claim for this section of the Constitution a wider scope than to guard against the evils, resulting from legislation of the character mentioned by Thurman, J., in Cass v. Dillon, Scott, J., in Lehman v. McBride, Boynton, J., in McGill v. State, and Okey, J., in Falk ex parte, but such efforts have uniformly failed. The only statutes which have been declared in conflict with this section of the Constitution, are statutes making different classes of different parts of the territory of the state, such as cities, villages, etc.
This section of the Constitution requires that laws of a general nature shall have not only an operation, but a uniform operation throughout the state, that is the whole state, and not only in one or more counties. The operation must be uniform upon the subject matter of the statute. It cannot operate upon the named subject matter in one part of the state differently from what it operates .upon it in other parts of the ■state. That is, the law must operate uniformly on ■the named subject matter in every part of the -state, and when it does that it complies with this section of the Constitution. That this is the scope *99 and purpose of this section appears front its language, the debates of the constitutional convention, and the uniform construction placed thereon by this court in the cases above cited, and others hereinafter referred to.
As the statutes affecting different cities and villages of different classes practically do not operate in every part of the state, but only where a city or village of the particular class is found, it might seem that such laws do not operate uniformly throughout the state. A moment’s reflection will show that this is not so. If a new city or village of a particular class should be built up in the wildest spot in the state, the statutes applicable to such class of city or villages would be found to be in force there, and in that sense all statutes applicable to different classes of cities and villages, are in uniform operation in every part of the state. The classification of cities and villages is in its nature territorial, and this court has uniformly held that such classification must be reasonable and not arbitrary.
On the other hand, statutes as to rights of persons and property usually are, and in their nature must be, arbitrary.
Very few statutes apply equally to every person in the state. Some apply only to males, some ■ to females, some to minors, some to persons of unsound .mind, some to office holders and some to criminals. As pointed out by Minshall, J., in Adler v. Whitbeck, 44 Ohio St., 539, such classes are arbitrarily formed by the general assembly, and “if the legislature has erred in not including what has been excepted from the operation of the law, it is simply an error of judgment in the exer *100 eise of its authority, and cannot be reviewed by the courts. ’ ’
In Adler v. Whitbeck, supra, an effort was made to have the statute, there under consideration, declared unconstitutional because its classification included saloons, and excluded distilleries and breweries, but the effort failed.
A similar effort was made in Senior v. Ratterman, 44 Ohio St., 681, because wholesale dealers and manufacturers were not included within the same class, and the effort again failed.
A similar effort was made in State v. Turnpike Co., 37 Ohio St., 481, as to the classification of turnpikes? and the effort again failed.
The court of appeals of the state of New York, under a similar provision as to general laws, holds that the courts cannot control such classifications made by the legislature.
In re New York Elevated Railroad, 70 N. Y., the court, on page 351, say: ‘ ‘ Can a court take proof for the purpose of showing a statute valid and regular upon its face to be unconstitutional? And does the validity of a law which is required to be general, and which is general in its terms, depend upon the number of subjects upon which it can operate, or upon the size of a class to which it applies ? . These questions must be answered in the negative. ’ ’
In Iowa the language of the constitution is as follows : ‘ ‘ All laws of a general nature shall have a uniform operation; the general assembly shall not grant to any citizen or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens. ”
It will be noticed that the words “ throughout the state ’ ’ are not contained in the Iowa constitu *101 tion, and that unlike our Constitution, it prohibits the General Assembly from granting to any citizen, or class of citizens, privileges or immunities, which upon the same terms, shall not equally belong to all citizens.
In this latter regard the scope of the Iowa constitution is broader than our own. Decisions under the Iowa constitution, therefore, can throw no light upon the proper construction to be placed upon this section of our constitution.
The constitution of California provides in this regard as follows : ‘ ‘All laws of a general nature shall have a uniform operation.” As to this part of the California constitution, and as to the similar provision in our own, Okby, J.,in Falk ex parte, 42 Ohio St., 641, says: “And in this connection it is proper to refer to the origin of the constitutional provision in question. We find that it was suggested by a provision in the constitution of California, which provision, however, had not been construed when our Constitution was adopted: but the California constitution did not contain the words, “throughout the state;” they were added to our Constitution, on motion, while the provision was under consideration in the convention (2 Debates579); and the absence of thosewords was made the ground of decisions in California which would never have been made if the constitution of that state had contained those words.”
This quotation from the opinion of Okey, J., shows that the decisions under the California constitution, can not be regarded as criteria in the interpretation of our own, as to this section. The words ‘throughout the state’ imply a limitation in one respect, and give an extended scope in an *102 other, not possessed by constitutions of other states not having those words.
The scope and force of this section of our Constitution being as herein indicated, it is clear that the statute in question is not in conflict therewith. The statute is in operation in every part of the state, and operates uniformly upon the classes of persons therein designated, in every part of the state. The act is clearly authorized as a police regulation to protect the health and promote the comfort of those engaged in operating electric cars.
If there are other persons requiring protection, ■such protection should be sought through the General Assembly by increasing the protected class, rather than by removing all protection, through the action of the courts.
There is another reason why this statute can not be declared unconstitutional. While a statute must stand or fall by its operation, rather than by its mere form, yet in passing upon the constitutionality of a statute, a court can judge of its operations only through facts of which it can take judicial notice. A court cannot take testimony to determine the operation of a statute, and thereby declare it unconstitutional. Neither can a court judicially know that a cable car, or a horse car, is so constructed and operated as to require the same means of protection for the operatives as is required on electric cars.
The appliances and construction of cars, and in fact all kinds of machinery, are continually changing, and it is within the exclusive authority of the General Assembly, in the exercise of its police power, to determine, by general laws, what if any, *103 regulations are required for the protection of the health, safety and comfort of the operatives.
Many citations have been made, in the briefs of counsel, from the federal courts, under the first section o‘f the fourteenth amendment to the constitution of the United States.
The force and scope of this section is very different from section 26 of article II of the Constitution of our own state.
Without going into an extended examination of this amendment, it is .sufficient to say that the statute in question is not in conflict therewith, as clearly appears from the following authorities: Barber v. Connolly, 113 U. S. 27-31; Bell's Gap R. R. Co. v. Pa., 134 U. S., 238; Giozza v. Tiernan, 148 U. S., 657, 662; The “Truck Store” cases in Illinois (141 Ill., 171), and the “Script” cases in West Virginia (33 W. Va., 179, 188), have no application to the question in this case.
The conclusion therefore is that the act in question is a valid law, and that the court of common pleas erred in sustaining’ the demurrer to the indictment.

The exceptions of the prosecuting attorney axe, therefore, sustained.