STANDARD OIL CO. v. CITY OF SPARTANBURG.

1. CONSTITUTION—ORDINANCES—DISCRIMINATION—LICENSE TAX.—An ordinance requiring a dealer in oils to pay a certain license tax and dealers in oils having already paid the tax, nothing is not unconstitutional because discriminative in its classification, but is unconstitutional because there is no reasonable ground for such classification.

2. ESTOPPEL—ORDINANCE.—Taxpayer is not estopped from contesting constitutionality of a license ordinance now in force by having in a previous year suggested a similar one, which the municipality has changed from year to year by increasing the amount of tax.

Before BUCHANAN, J., Spartaburg, September, 1902. Reversed.

Action by Standard Oil Co. against city of Spartanburg. From judgment for defendant, plaintiff appealed.

*Messrs. Carey & McCullough,* for appellant, cite: *Ordinance is discriminative in its classification:* 21 Ency., 784, 808, 804. *There is no valid reason for the classification:* 59 S. C., 396. *As to estoppel:* 42 S. C., 351; 184 U. S., 450; 94 U. S., 267.

*Messrs. Simpson & Bomar,* contra, cite: *As to the classification:* 59 S. C., 396. *As to estoppel of plaintiff:* Big. on Estp., 652; 51 Ala., 507; 29 Mich., 289; 77 Ill., 296; 41 S. C., 80; 19 S. C., 208; 42 S. C., 348; 57 S. C., 108.

April 13, 1903. The opinion of the Court was delivered by

MR. JUSTICE GARY. *Statement of facts.*—This is an action brought to recover the sum of two hundred and fifty dollars paid by the plaintiff under protest as a license tax for the business of selling oil in the city of Spartanburg. The defendant collected said sum under the following clause of an ordinance to raise supplies, ratified the 11th day of November, 1902: "*Kerosene:* Any merchant or merchan-

dise broker, dealer in oils, or agents for oil companies, or other persons receiving illuminating or lubricating oils either in carloads or less than carloads and selling and reshipping the same in quantities of ·50 gallons and upwards, shall pay a license of $250 per annum: provided, this license shall not apply to merchants and dealers handling oils on which the license has been paid." The allegations of the complaint material to the consideration of the questions raised by the exceptions are as follows:

"8. Plaintiff alleges that it is not liable for the special license tax of $250 required by the said ordinance, for the reason that the said ordinance is unconstitutional, null and void, in that it discriminates in favor of such merchants or dealers handling oils, etc., on which the license has been paid, and in that particular does not apply equally to all persons engaged in the same business in the city of Spartanburg. That it is also discriminative and unconstitutional, in that it does not require any license tax of those merchants or dealers selling and reshipping in quantities under fifty gallons, nor does it require any license or license tax of merchants engaged in lines of business other than those specified in said ordinance.

"9. Plaintiff also alleges that by the terms of the said ordinance, it is a tax which is levied upon the property therein mentioned, and not upon the occupation, and is, therefore, unconstitutional, null and void, in that it is not levied upon the said property in proportion to its value.

"10. The plaintiff alleges, therefore, for the reasons above set forth, that the said ordinance is in violation of·the Constitution of 1895, with reference to taxation and license taxes, and more especially article I., section 5, which provides: 'The privilege and immunities of citizens of ·this State and of the United States under this Constitution shall not be abridged, nor shall any person be deprived of life, liberty or property without due process of law, nor shall any person be denied the equal protection of the laws.' So much of article I., section 17, as provides: 'Private property shall

not be taken for private use without the consent of the owner, nor for public use without just compensation being first made therefor.' Article VIII., section 6, which provides: 'The corporate authorities of cities and towns in this State shall be vested with power to assess and collect taxes for corporate purposes, said taxes to be uniform in respect to persons and property within the jurisdiction of the body composing the same; and all the property, except such as is exempt by law, within the limits of cities and towns shall be taxed for the payment of debts contracted under authority of law. License or privileged taxes imposed shall be graduated so as to secure a just imposition of such tax upon the classes subject thereto.' Article X., section 1, which provides: 'The General Assembly shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe regulations to secure a just valuation for taxation of all property, real, personal and possessory, except mines and mining claims, the products of which alone shall be taxed; and also exempting such property as may be exempted by law for municipal, educational, literary, scientific, religious or charitable purposes: *Provided, however,* That the General Assembly may impose a capitation tax upon such domestic animals as from their nature and habits are destructive of other property: *And provided, further,* That the General Assembly may provide for a graduated tax on incomes, and for a graduated license on occupations and business.' So much of article X., section 5, as provides: 'That all taxes levied for corporate purposes shall be uniform in respect to persons and property within the jurisdiction of the body imposing the same.'

"11. That on January 1, 1902, under an agreement had with the defendant, through its duly authorized officers and agents, the plaintiff paid the said sum of $250 demanded by the defendant, protesting, however, that it was not liable therefor, and in order to save its agent from threatened arrest for carrying on the business hereinbefore mentioned in violation of the terms of the said ordinance, on the said 1st

day of January, 1902, took a refunding receipt from the said
defendant, whereby the defendant agreed that in the event
that plaintiff brought its action in any Court having juris-
diction to recover the said sum of $250 thus paid under pro-
test, and it should be judicially determined that the said
defendant was not liable in the said sum, the defendant
would refund to the said plaintiff the said sum of $250 or
such sum as plaintiff might recover judgment for in the said
action."

The answer of the defendant was practically a general de-
nial.

The decree of his Honor, the Circuit Judge, omitting the
statement as to the object of the action, is as follows:

"The plaintiff attacks the ordinance in question on many
grounds, the main grounds of attack being that the ordi-
nance is void upon its face—as in conflict with the Constitu-
tion; *in that* it is discriminatory and unequal; in that it does
not apply to merchants generally but only to such as sell oil;
in that it does not even apply to all sellers of oils, but ex-
empts such as sell oil bought from others who have paid li-
cense tax thereon, and in that the provision imposes license
only on such persons as sell oil in quantities of fifty gallons
and upwards. Upon the first and third grounds of attack
mentioned above, I do not think the ordinance is invalid. As
to the second ground, even if the exemption referred to
would otherwise invalidate the ordinance, the fact that this
particular provision was framed by the plaintiff, and inserted
in the ordinance at its request, is sufficient to defeat this ac-
tion. This fact clearly appears from the evidence, and after
such conduct on its part, it should not now be heard to assert
the invalidity of this provision of the ordinance, but is
stopped from doing so. It is, therefore, ordered, that the re-
lief asked in the complaint be refused, and the complaint be
dismissed with costs."

The plaintiff appealed from said decree and the defendant
gave notice of additional grounds upon which it would ask
that the decree be sustained.

*Opinion.*—The exceptions and the additional grounds upon which the respondent asks that the judgment be sustained raise the following questions:

1. Was there error on the part of his Honor, the Circuit Judge, in not holding that the ordinance is discriminative and, therefore, unconstitutional, in that it fails to make a reasonable classification of other avocations of like character and impose a license tax thereon? In other words, it is contended that the ordinance was discriminative in its classification.

2. Was there error on the part of his Honor, the Circuit Judge, in not holding that the ordinance is discriminative and, therefore, unconstitutional, in that it does not purport to reach even all persons engaged in the same business with plaintiff, by exempting "merchants and dealers handling oils on which the license has been paid?"

3. Was there error on the part of his Honor, the trial Judge, in holding that "even if the exemption referred to would otherwise invalidate the ordinance, the fact that this particular provision was framed by the plaintiff and inserted in the ordinance at its request, is sufficient to defeat this action?"

We proceed to consider the first question. In *Hill* v. *City Council,* 59 S. C., 396, 38 S. E. R., 11, the Court says: "The Constitution (sec. 6, art. VIII.,) only requires that the license or privilege tax shall be *just.* The requirements in said section that taxes must be *uniform in respect to persons and property* does not apply to the license or privilege tax. As all callings, occupations and kinds of business differ more or less the one from the other, the very power to impose a tax that will be just on each class, 'involves the right to make distinction, between different trades and between essentially different methods of conducting the same general character of business,'" citing *In re Haskell,* L. R. A., vol. 32, p. 529. In *Billings* v. *Illinois,* 23 Sup Ct. Rep., 272, the Supreme Court of the United States held that

the equal protection of the laws is not denied by an inheritance tax, because under that statute, as interpreted and enforced by the State Courts, certain life estates may be taxed when the remainder is to lineal descendants of the decedent, but not when the remainder is to collateral heirs or strangers in blood. In that case the Court uses this language: "Classification is essentially the same in law as it is in other departments of knowledge or practice. It is the grouping of things in speculation or practice because they 'agree with one another in certain particulars and differ from other things in those same particulars.' Things may have very diverse qualities and yet be united in a class. They may have very similar qualities and yet be cast in different classes. Cattle and horses may be considered in a class for some purposes. Their differences are certainly pronounced. Salt and sugar may be associated in a grocer's stock for a grocer's purposes. To confound them in use would be very disappointing. Human beings are essentially alike, yet some individuals may have attributes or relations not possessed by others which may constitute them a class. But their classification—indeed, all classification—must primarily depend upon purpose, the problem presented. Science will have one purpose, business another and legislation still another. The latter, of course, on account of the restraints upon the legislature, may not be legal, may not be within the power of the legislature. To dispute that power, however, is not the same thing as to dispute classification, and yet that there may be a dependence—more freedom of classification in some instances—has been indicated by the cases. A State cannot regulate interstate commerce, however accurate its classification of objects may be. On the other hand, the taxing power of a State is one of its most extensive powers. It cannot be exercised upon persons grouped according to their complexions. It can be exercised if they are grouped according to their occupations. A State may regulate or suppress combinations to restrict the sale of products. The power cannot be exerted to forbid combinations among

those who buy products and permit combinations among those who raise or grow products. 184 U. S., 540, 46 L. ed., 679; 22 Sup. Ct. Rep., 431. And yet, exercising its taxing power, it has been decided that a State may make that discrimination. 179 U. S., 89, 45 L. ed., 102; 21 Sup Ct. Rep., 43. Other illustrations may be taken from the cases which tend to the same end. If the purpose is within the legal powers of the legislature and the classification made has relation to that purpose (excludes no persons or objects that are affected by the purpose, includes all that are), logically speaking, it will be appropriate; legally speaking, a law based upon it will have equality of operation. And excluding our right to consider policies or assume legislation, we have many times said that a State in its purposes and in the execution of them, must be allowed a wide range of discretion, and that this Court will not make itself a harbor in which can be found 'a refuge from ill-advised, unequal and oppressive' legislation. 102 U. S., 691, 26 L. ed., 238."

In *Am. Sug. Ref. Co.* v. *Louisiana,* 21 Sup. Ct. Rep., 43, the United States Supreme Court, in discussing the provision of the Constitution as to the equal protection of the laws, says: "The power of taxation under this provision was fully considered in *Bell's Gap R. Co.* v. *Pennsylvania,* 134 U. S., 232, 33 L. ed., 892· 10 Sup. Ct. Rep. 533; in which it was said not to have been intended to prevent a State from changing its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property altogether; may impose different specific taxes upon different trades or professions; may vary the rates of excise upon various products; may tax real and personal estate in a different manner; may tax visible property only and not securities; may allow or not allow deductions for indebtedness. 'All such regulations and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the State legislature or the people of the State in framing their constitution.' See, also, *Home Ins. Co.* v. *New York,* 134

U. S., 594, 33 L. ed., 1025; 10 Sup. Ct. Rep., 593; *St. Louis, I. M. & S. R. Co.* v. *Paul,* 173 U. S., 404, 43 L. ed., 746; 19 Sup. Ct. Rep., 419. In *Pacific Exp. Co.* v. *Seibert,* 142 U. S., 339, 35 L. ed., 1035; 3 Inters. Com. Rep., 810; 12 Sup. Ct. Rep., 250, a State statute defining an express company to be such as carried on the business of transportation on contracts for hire with railroad or steamboat companies, did not individually discriminate against the express companies defined by it by exempting other companies carrying express matter in vehicles of their own. This case is specially pertinent to the one under consideration. See, also, *Giozza* v. *Tierman,* 148 U. S., 657, 37 L. ed., 599; 13 Sup. Ct. Rep., 721; *Columbus Southern R. Co.* v. *Wright,* 151 U. S., 470, 38 L. ed., 238; 14 Sup. Ct. Rep., 396; *Duncan* v. *Missouri,* 152 U. S., 377, 38 L. ed., 485; 14 Sup. Ct. Rep., 570; *Western Union Teleg. Co.* v. *Indiana,* 165 U. S., 304, 41 L. ed., 725; 17 Sup. Ct. Rep., 345; *Adams Exp. Co.* v. *Ohio State Auditor,* 165 U. S., 194, 41 L. ed., 683; 17 Sup. Ct. Rep., 305. The Constitution of Louisiana classifies the refiners of sugar for the purpose of taxation into those who refine the products of their own plantations, and those who engage in a general refining business and refine sugars purchased by themselves or put in their hands by others for that purpose, imposing a tax only upon the latter class. * * * The discrimination is obviously intended as an encouragement to agriculture, and does not deny to persons and corporations engaged in a general refining business the equal protection of the laws." This question is fully and ably discussed by Mr. Justice Jones, in the recent case of *Simmons* v. *Tel. Co.,* 63 S. C., 425, 41 S. E. R., 521. These authorities show that the first question must be answered in the negative.

We will next consider the second question. The case of *Gulf C. & S. F. Ry. Co.* v. *Ellis,* 165 U. S., 150, 17 Sup. Ct. Rep., 255, decides that the classification must not be arbitrary—that is, "must always rest upon some difference which bears a reasonable and just relation to the act in re-

spect to which the classification is proposed," also that such classification must be "based upon some reasonable ground, some difference which bears a just and proper relation to the attempted classification, and is not a merely arbitrary selection." This language is quoted with approval in *Porter* v. *Ry.,* 63 S. C., 169. The fact that all persons engaged in the sale of oil in the city of Spartanburg were not affected alike by the ordinance, was not sufficient to render it unconstitutional, if there was a reasonable classification of such persons. In *Clark* v. *Titusville,* 22 Sup. Ct. Rep., 382, the United States Supreme Court held that an ordinance imposing a license tax upon the merchants of a city, by which they are divided into classes according to the amount of their sales—each class including all whose sales range between a certain minimum and maximum amount—does not violate the constitutional provision as to the equal protection of the laws, although the result is to make persons in different classes pay different rates and to make those in the same class pay at a different ratio of the amount their sales differ.

We now come to the consideration of the most important question in the case, which is whether the exemption from taxation of those merchants and dealers handling oils on which the license had been paid was a reasonable classification. It can not be successfully contended that the exemption from payment of the license tax was intended for the benefit of the municipality, for the tendency of the classification was to lessen its revenues. Nor can it be argued that the exemption was in any sense an encouragement to commerce, for the merchants and dealers under this classification conducted their business in no respect different from those who paid the license tax. It can scarcely be insisted that it was for the benefit of those who paid the tax, as its tendency was to create a larger number of competitors in business with them, especially when we have before us one of the parties who paid the tax objecting to its legality. We are irresistibly forced to the conclusion that the exemption

was intended as a mere favor to those included within the classification and that it was, therefore, unconstitutional.

We will next consider the third question. It appears from the testimony that in 1897 the plaintiff objected to the license tax sought to be collected by the defendant for that year, and as a result certain negotiations ·were had between the defendant and certain agents of the plaintiff. As a result of these negotiations the amount agreed upon was $100, and the defendant put in its supply ordinance for that year a provision similar to the one in question, which was framed by an agent of the plaintiff. Mr. Calvert, the mayor, testified that those negotiations could only bind the city council for that year. So long as the defendant left the license tax at the sum of $100, the plaintiff paid the same without protest. Thereafter the defendant raised the tax to $150, then $200, then $250, by the ordinance in question. This controversy does not arise out of the ordinance of 1897 but out of the ordinance of 1902, which in law is entirely separate and distinct from the ordinance of 1897. The defendant has made material changes in the amount of the tax, and while the plaintiff was willing to pay the tax of $100, we can very well understand why it would not be willing to pay the tax required by the last ordinance. We cannot agree with the Circuit Judge that the plaintiff was estopped from contesting the constitutionality of the ordinance in question.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed and the case remanded to that Court for a new trial.