## CONSTITUTIONALITY OF THE DEAN LAW.

Common Pleas Court of Stark County.

STATE OF OHIO v. BENTON J. BLOOMFIELD. *

Decided, 1911.

*Constitutional Law—Answers Required by the Dean Character Law—
Not in Contravention of Constitutional Rights—Inhibition Against
Licensing the Sale of Liquor not Violated—Equal Protection of the
Laws—Privileges and Immunities—Sections 6083 and 13219.*

1. The answers required under the Dean law from one engaged in the
   sale of intoxicating liquor, do not bring said law into conflict with
   Article V of the Constitution of the United States, or of Section 10
   of the Bill of Rights of the Ohio Constitution because of possible
   incrimination of the person answering.
2. Nor is this law in contravention of the constitutional provision
   against licensing the traffic in intoxicating liquors.
3. Nor does said law violate Sections 1 and 2 of the Bill of Rights of
   the Ohio Constitution or the Fourteenth Amendment of the Federal
   Constitution.

DAY, J.

In this case a motion in arrest of judgment has been filed
which attacks the constitutionality of the law under which the
indictment is found, the statute in question being commonly
called the Dean law.

The record discloses that the defendant, Benton J. Bloomfield,
was indicted by the grand jury of the January, 1911, term of
this court for the offense of making false answers to the as-
sessor under said law. A demurrer was interposed to the indict-
ment which was heretofore overruled, and to which the de-
fendant excepted. A plea of "not guilty" was entered and
the case proceeded to trial, a jury being impanneled and a ver-
dict of guilty was rendered. Whereupon the defendant filed

*Affirmed by the Circuit Court without opinion; Circuit Court affirmed
   by the Supreme Court, June 27, 1912, *Bloomfield* v. *State*, 86 Ohio
   State, p. —.

this motion in arrest of judgment and attacks the law in question upon three grounds:

First. *That answers made under the statute might tend to criminate the person answering.*

The act in question requires that certain questions be answered by one who has engaged in the liquor business, and it is contended that the answers to these questions required by the Dean law might tend to criminate one making such answers, this being in violation of Article V of the United States Constitution and Section 10 of the Bill of Rights of the State Constitution. The language in question being practically identical is as follows:

"Nor shall a person be compelled in any criminal case to be a witness against himself."

It will be noted that the constitutional protection extends to "any criminal case," and does not reach a situation here presented, where the answers given are not in "a criminal case." But further than that, the language of both the state and federal Constitutions is "compelled" to be a witness. Clearly, no man is compelled to answer the questions propounded under the Dean law, as he is not compelled to go into the liquor business. It is optional with him, and if he does conclude to follow such work it is voluntary and of his own accord. It follows that the questions answered under the Dean law are, therefore, voluntarily answered, and he is not compelled to incriminate himself unless he chooses or does so voluntarily. His constitutional rights can not, therefore, be said to be violated in that regard, as he has not been *compelled* to do anything.

Second. *That act operates as granting a license to traffic in intoxicating liquor.*

The chief contention of counsel at the argument of this motion was, that the act under consideration operated as a license and was therefore contrary to the constitutional provisions of this state and the decisions of our Supreme Court. A very able argument is made in behalf of this contention, it being urged that

the act comes within the inhibition of the Constitution which reads that—

"No license to traffic in intoxicating liquors shall hereafter be granted in this state, but the General Assembly may, by law, provide against evils resulting therefrom."

This question has received frequent attention from the Supreme Court of this state, and a brief resume of the cases bearing upon this question are as follows:

*State* v. *Hipp,* 38 O. S., 199, providing that one must give bond to pay the tax and providing of penalty for failure so to do. Opinion of Okey, J. Johnson, J., dissenting.

*State* v. *Frame,* 39 O. S., 399: Scott law held constitutional. Providing for a tax lien upon real estate in which such business is conducted. Opinion by McIlvaine, J. Okey dissenting.

*State* v. *Sinks,* 42 O. S., 345: *Held:* Scott law amended unconstitutional in so far as it provided for a lien on real estate occupied by a tenant dealing in liquor, and reversing *State* v. *Frame.* Opinion per curiam. Okey, Owen and Follett, JJ., concurring. Johnson and McIlvaine dissenting.

*King* v. *Cappellar,* 42 O. S., 218: Had under consideration the Scott law, but did not pass definitely upon its unconstitutionality in all respects. Opinion by Follett, J. Johnson and McIlvaine concur in affirming judgment on the ground that the act in question is constitutional. On the point made by the majority for uniting in affirming the judgment they express no opinion.

*Butzman* v. *Whitbeck,* 42 O. S., 223: Follows and approves *State* v. *Hipp,* 38 O. S., 223. Follows and approves *State* v. *Hipp,* 38 O. S., 199, holding Scott law unconstitutional so far as it provided for a lien on real estate occupied by a tenant who is a dealer in liquors, and in effect a license law and therefore unconstitutional. Whether the act in other respects is unconstitutional was not decided. Opinion by Owen, J. Johnson and McIlvaine dissenting.

*Adler* v. *Witbeck,* 44 O. S., 347: Dow law declared constitutional and holds that the tax and penalties imposed for refusal

to sign and verify statement to assessors does not make the law unconstitutional and a license law.

*Anderson* v. *Brewster,* 44 O. S., 476, holds Dow law, so far as it provides an assessment or tax upon business of trafficking in liquors not in effect a license law. Opinion by Dickenson, J. Owen and Follett, JJ., dissenting.

The effect of these two latter seem to reverse *State* v. *Sinks* in so far as that case reverses *State* v. *Frame.*

From an examination of these somewhat conflicting opinions and in the light of the latter two cases especially, our Supreme Court seems to have come to a view which recognizes a clear distinction between a license and a tax, and that in so far as an act is regulatory in its nature and is an exercise of the police power of the Legislature over the traffic in intoxicating liquors, such acts are constitutional and not within the inhibition above quoted.

There is doubtless much room for argument concerning the expression of the various judges constituting the court from *State* v. *Hipp,* 38 O. S., 199, to *Anderson* v. *Brewster,* 44 O. S., 576, but upon no other theory can I reconcile their opinions than the one which I have stated above.

However, in my opinion, the question of the constitutionality of the act in question has been directly passed upon by the Supreme Court of this state in this case of *Hayner* v. *State,* 83 O. S., page 178. On page 197 the court gives attention and construction to the following language used by the counsel for plaintiff in error, Haynor, in his brief:

"The *whole statute* is probably *unconstitutional* * * * the first part as being definitely a license law within our decisions, and fourth section as being a general law not of uniform operation."

Now, Judge Spear on page 197, after quoting the above language, says:

"It seems to us that it can not be necessary at this late day to enter into a discussion as to whether our liquor taxing laws are license laws. The ground has been fully plowed and har-

rowed in many previous decisions; and section four does operate uniformly within the meaning given that requirement of the Constitution as to general laws, because the operation of the statute is the same in all parts of the state where the same circumstances and conditions exist. An act is not required to be of universal operation in order to be of uniform operation. To sustain this objection would be to overrule all the decisions of this court relating to local option. We regard the policy of the state in that respect as established by those decisions and are not disposed at this late day to disturb it."

It seems to me that the language used by Judge Spear must be taken to mean what it says, to-wit, "that there is no question as to whether our liquor taxing laws are license laws or not," and a study of the many decisions rendered by that able and learned judge must certainly bring one to the conclusion that he never leaves in doubt the position of the court on a proposition of law enunciated in an opinion delivered by him.

In concluding this feature of the contention offered by the learned counsel for the defendant I call attention to the following principle:

That a license is of the nature of a privilege, and it will be a strange incongruity to grant one the privilege of bearing the burden of a tax. A tax which may be resorted to for the purpose of restraining what is opposed to the public interests, would hardly be called a license to do that which is sought to be restrained. The two things are entirely distinct in their characteristics. A license may exist without the imposition of a tax but a tax may be imposed without the granting of a license.

Third. *That the act is in violation of State and Federal Constitutions.*

The third ground of attack, and to my mind the most plausible, is the claimed violation of Sections 1 and 2 of the Bill of Rights of the Ohio Constitution, and the Fourteenth Amendment of the Federal Constitution. These provisions are, in substance, "that all men have certain inalienable rights, among which are those of enjoying and of defending life and liberty, acquiring, possessing and protecting property." The second

section, among other things, recites "that the government is instituted for their (people) equal protection and benefit."

The Fourteenth Amendment recites, "No state shall make or enforce any law which shall abridge the privileges and immunities of the citizens of the United States, nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the full protection of the law."

No one of the questions propounded under the Dean law is, "are you, or if a firm, is any member of your firm, an alien or an unnaturalized resident of the United States"? It is therefore claimed that this law is unconstitutional because an alien or an unnaturalized resident of the United States may not enjoy equal privil ges with the citizens of the United States.

There is nothing in this record to disclose that this defendant is either an alien or unnaturalized resident of the United States, and that he is thereby injur.d in any of his substantial rights or constitutional privileges so far as he himself is concerned. It is a principle of constitutional law that only those who are prejudiced by an unconstitutional act can be heard to make objection to it. The courts will not listen to an objection made to the constitutionality of an act by a party whose rights it does not effect and who, therefore, has no interest in defeating it.

It is firmly settled that a party will not be heard by a court to question the validity of a law, or any part thereof, unless he shows that some right of his is impaired or prejudiced thereby. *Cooley's Constitutional Limitations*, page 232; *Law of Intoxicating Liquors*, Woolen & Thornton, Section 186, pages 279 and 280, and cases cited.

I recognize however the right of the defendant to raise the question if the parts of the law which affect him are so inseparably connected with the parts which do not affect him claimed to be unconstitutional as to make a complete structure that must either stand or fall as a whole.

Be that, however, as it may, in view of the fact that the question here presented and ably argued in the claimed violation of

the Fourteenth Amendment and Ohio Constitution, it is entirely proper to discuss the defendant's rights thereunder.

First. It is strongly urged that this act is in violation of the Fourteenth Amendment of the United States Constitution. It should be noted at the outset that there is a marked and clear distinction between the words "equal protection of the laws" and "equal privileges and immunities." This distinction is apparent on the face of the article and was undoubtedly put there for the specific purpose of making a distinction. "Equal protection of the law" applies to all persons; while the expression "privileges and immunities" applies to the citizens of the United States. Now, with this distinction clearly in mind as applicable to the case at bar, and in construing the various decisions relative to the Fourteenth Amendment, it is apparent that the law under consideration does not deprive any one of a constitutional right which is guaranteed. The act of depriving an alien or unnaturalized person of the right to carry on the traffic does not come within any classification under the article. It would clearly come within the term "privileges and immunities." Now, "privileges and immunities" are vouchsafed to citizens, but on the other hand, all persons are entitled to the equal protection of the laws. This law in letter and spirit is for the purpose of protecting society and the public from the evil effects resulting from the trafficking in intoxicating liquors, and it equally protects the alien from the evils as well as any other. He can not complain because he is not permitted to cause the evils sought to be prevented. This Fourteenth Amendment has frequently and repeatedly been invoked in questions arising under the validity of license through laws regulating the sale and control of intoxicating liquors, but almost universally without avail. This is true of that part of the amendment concerning the abridgment of privileges and immunities of citizens of the United States. The right to sell intoxicating liquors is not one of such privileges and immunities. *Jordan* v. *Evansville*, 163 Indiana, 512.

The language of Chief Justice Fuller in *Geoizza* v. *Tirna*, 148 U. S., 657, is particularly in point:

"Privileges and immunities of citizens of the United States are privileges and immunities arising out of the natural and essential character of the national government and granted or secured by the Constitution of the United States, and the right to sell intoxicating liquor is not one of the rights growing out of such citizenship."

*Barkmyer* v. *Iowa,* 18th Wallace, 29:

"The Fourteenth Amendment does not take from the states their powers of police that were reserved at the time the original constitution was adopted. Undoubtedly it forbids any arbitrary deprivation of life, liberty and property and secures equal protection to all under like circumstances in the enjoyment of their rights. But it was not designed to interfere with the power of the state to protect the lives, liberty and property of its citizens, and to promote their health, morals, education and good order."

Again, Mr. Justice Fields in *Crowley* v. *Christianson,* 137 United States, page 86, says:

"There is no inherent right in a citizen to sell intoxicating liquors by retail. It is not a privilege of a citizen of the United States. The manner and extent of regulation rests in the discretion of the governing authorities. It is a matter of legislative will only."

Attention is also called to *Mugler* v. *Kansas,* 123 U. S., 623; 26 Federal Reporter, 289; 42 South Carolina, 222; 10 Missouri, 591; 18 Nebraska, 323; 26 Connecticut, 179.

This question of the application of the Fourteenth Amendment, matters concerning which the state seeks to regulate by virtue of its police power, has received many judicial interpretations. Attention is called to the language of Mr. Justice Field, in the 100 United States, page 367:

"The equality of protection intended does not require that all persons shall be permitted to participate in the government of the state and the administration of its laws, to hold its offices, or be clothed with any public trusts. All persons within the jurisdiction of the state, whether permanent residents or temporary sojourners, whether old or young, male or female, are to be equally protected, yet no one will contend that equal protec-

tion to men, to women, to children, to aged, to aliens, can only be secured by allowing persons of the class to which they belong to act as jurors in cases affecting their interests.''

Again, by the same justice in the 113 United States, 709:

''However broad the right of every one to follow such calling and employ his time as he may judge most conducive to his interests, it must be exercised subject to such general rules as are adopted by society for common welfare. All sorts of restrictions are imposed upon the actions of man notwithstanding the liberty which is guaranteed to him. It is liberty regulated by just and impartial laws.''

The right to enact laws in the nature of police regulations for the control and regulating of the liquor traffic has long been recognized by the federal courts, and the act under discussion involving the right of the state to exercise such police power can not be said to infringe any right guaranteed by the Federal Constitution.

The cases cited by counsel in the very able prepared brief and relied on to support the theory of unconstitutionality recently advanced, seem to my mind to depend for their strength upon a denial of ''equal protection of the law,'' and not upon failure to secure equal privileges and immunities. I can not see that the cases cited considered in the light of that distinction have the force claimed.

Second. In regard to the Ohio cases cited by counsel upon the constitutionality of the act in question, the underlying principle of all the cases cited is, that there is a discrimination against some person, or a class of persons, which denies them an equal protection of the law, or that there is an unequal operation of the law throughout the state. Clearly this discrimination can not be said to affect the rights of those who wish to sell intoxicating liquor, as all persons are admitted upon the same plane. It is true that certain persons are not admitted, but those who are treated uniformly, both as to place and as to protection and privilege and immunity. The Legislature has simply exercised its power in regulating the sale of intoxicating liquors so that all persons who desire to sell may come within

the class and shall receive equal treatment and equal privilege, but it also says to certain other persons "that in the regulating of the sale of intoxicating liquors you may not sell." ·Therefore the regulating of the sale of intoxicating liquors, those within the class who sell, have lost no privilege and are not discriminated against, and those that are without that class have lost no constitutional privilege or immunity and are still entitled to the equal protection of the law; and the law is uniform in its operation, but they are not permitted to enter the class by virtue of the right of the Legislature to regulate the sale of intoxicating liquor, a clear and undoubted right of the exercise of police power by the Legislature which is constitutional under both the federal and state constitutions.

This principle is recognized by the Supreme Court of this state in declaring the Rose Law constitutional. In the case of *State* v. *Walder,* 10th Ohio Nisi Prius, 497, it was held:

"Prohibition of the sale of malt liquor without reference to its intoxicating quality is within the police power of the state.
"The sale of malt liquor for use as a beverage is within the inhibition of the Rose County Local Option Law, and it is no defense to a prosecution for violation of this law that the beverages sold were not intoxicating."

Now, it is contended in this case that by specifying certain kinds of liquor that might or might not be sold, the constitutional rights of the defendant were violated under the Fourteenth Amendment by the law regulating and prohibiting the sale of certain kinds of liquor. On page 503 the court said:

"It is sufficient to say that the unopposed current of judicial opinion as expressed by the highest courts of many states is that the Legislature has the power to define what sort of liquors shall be deemed intoxicating for the purpose of administering laws to restrain evils flowing from the use of intoxicating drinks."

Now, this case of *State* v. *Walder* was passed upon by the Supreme Court in the 83 O. S., page 68, and the judgment of the court of common pleas was affirmed. The language of Judge Killitts in rendering the common pleas court decision may be ac-

cepted as having received the approval of the Supreme Court. If, therefore, the Legislature has the power to define what sorts of liquors shall be deemed intoxicating for the purpose of administering laws to restrain the evils flowing from the use of intoxicating drinks, it may with equal force be said to have the power to prescribe what persons may engage in the business of selling intoxicating liquors and what persons may not. It would equally be an invasion of constitutional rights to say that by the police power the Legislature may declare certain liquors to be intoxicating and to regulate their sale, and to say that certain persons may not enjoy the privileges of such sale. One is as much an unconstitutional provision as the other.

The principle of the right of the Legislature to regulate the liquor traffic, it seems to me has been passed upon by our Supreme Court in construing the act to regulate the practice of medicine in the state of Ohio. Of course, I recognize that there is no constitutional provision as to licensing in the medical profession, but the invasion of the personal rights, privileges and immunities and equal protection of the law is the same. The third syllabus in the case of *France* v. *The State*, 57 O. S., page 1, reads as follows:

"It is competent for the state under its power to provide for the welfare of its people, to establish needful regulations, and impose reasonable conditions, calculated to ensure proper qualifications, both with respect to learning and moral integrity of persons desiring to engage in the practice of medicine in the state, and require compliance therewith by such persons before they shall be permitted to practice within the state.

"The regulations adopted by the statute are of a character that do not infringe upon the privileges and immunities granted by Section 2, Article IV of the Federal Constitution to citizens of the several states, nor abridge those secured to citizens of the United States by the Fourteenth Article of Amendment of that Constitution."

Now, it is conceded that the Legislature by the Constitution has been given the power to provide against the evils resulting from traffic in intoxicating liquors; and if we should substitute in the third syllabus above quoted the words "liquor traffic" or

"saloon," the force and effect of the application of the principle involved will be the more apparent.   It would then read:

"It is competent for the state under its power to provide for the welfare of its people to establish needful regulations and impose reasonable conditions calculated to ensure proper qualifications both with respect to honesty and moral integrity of persons desiring to engage in the business of trafficking in intoxicating liquor in the state, and require compliance therewith by such persons before they shall be permitted to engage in such business within the state.

"The regulations adopted by this statute are of that character that do not infringe upon the privileges and immunities granted by Section 2 of Article IV of the Federal Constitution to citizens of the several states, nor abridge those secured to citizens of the United States by the Fourteenth Article of Amendment, of that Constitution."

Clearly if the Legislature had the right to regulate the practice of medicine, by excluding certain persons as not having the necessary qualifications to practice, by the same reasoning it would equally have the power to exclude persons whom it should not regard as qualified to engage in the liquor business.   If the exercise of this power in one profession or business is constitutional, in the interests of the welfare of the people, it is equally so in the other.   Illustrations of this right to regulate might be multiplied, but the above suffices to sustain the principle.

Taking this view of the three questions presented, I am of the opinion that the motion in arrest of judgment should be overruled, and exceptions preserved to the defendant.