## PLATT and DIMICK *against* HIBBARD and WEBB.

CASE; tried at the Clinton circuit, January, 1827, before WALWORTH, C. Judge.

*The declaration contained a count in trover, and three special counts; one charging the defendants, as common carriers; and that as such, they received certain pot-ashes and corn to be transported to St. Johns; another, as storing and forwarding merchants, receiving the goods to be stored and forwarded; and another, as keepers of a public store-house, and as receiving the goods to be safely kept and stored.

One who receives goods, for reward, into his store, [*498] though standing upon a wharf, the goods to remain there for the purpose of being forwarded, subject to the bailor's order, is liable merely as a warehouse man: not as a common carrier or wharfinger: and he is bound to exercise no more than ordinary care in preserving the goods.

*Semble*, that a wharfinger is bound only to the same degree of care as a warehouse man; and is not liable to the same extent as a common carrier.

Public store-keepers, receiving and storing goods, for hire, are not liable to the same extent as common carriers; nor are they bound to take better care of the goods, than a prudent man would ordinarily take of his own property.

*Semble*, that where goods so received are, of themselves, well secured, the mere circumstance of receiving goods of another sort into the same store, which invite thieves into the store, who set it on fire and consume the former goods, will not make the bailee liable, unless the receipt of the latter goods will probably produce such a consequence.

*Semble*, that where goods are so destroyed, the bailee is *prima facie* liable, on the bailor showing the loss or destruction of the goods; and it lies with the bailee to show they were not kept in consequence of the want of ordinary care on his part. But, *quere; vid.* note (a) to this case.

The standard by which ordinary diligence, in a bailee, is to be tested. Per Walworth, C. Judge, in his charge to the jury.

The difference in extent between the liability of a common carrier, and innkeepers and other bailees for reward; and what is meant by the words "the act of God." Per Walworth, C. Judge, in his charge to the jury.

On the trial, the defendants admitted that they received of the plaintiffs, at the defendant's store-house in Champlain, which stood on the defendant's wharf, on the lake, certain pot-ashes, in seven different parcels of three barrels each, from the 6th of July to the 3d of August, 1824. The delivery of the corn at the same place was proved. It appeared that the ashes were left in these quantities till enough should accumulate there to send to the Canada market at St. Johns, by water, on lake Champlain. On the 3d of August, one of the defendants told one of the plaintiffs, that he (the defendant) thought he could send the ashes to market in a day or two. But on the following night the store was entered by thieves and incendiaries, who set it on fire; and it was consumed with the pot-ashes, and corn, and various articles in store for others. It farther appeared that the defendants were then, and had been for several years, engaged there in the storing and forwarding business. They forwarded little or none by their own boat; but principally, if not wholly, by other boats which offered. The store in question was well secured. But no person slept in it. The same day on the evening of which the fire took place, about 3000 dollars worth of silk goods were landed at the storehouse from the steamboat, and stored there. Other dry goods were previously in store there. The defendants charged wharfage on ashes shipped at their wharf, whether stored or not. In 1824, the steamboat did the principal carrying from their wharf. The defendants had, in that year, previous to the fire, forwarded thence for the plaintiffs various articles of produce, a part in the boat of a third person, on which they had paid the freight, and charged it to the plaintiffs with commission on the freight.

[*499]

*The plaintiffs' counsel insisted that public storekeepers, receiving and storing goods as such for hire and reward, are, by law, liable to the same extent as common carriers; or if not, that they are bound to take better care than a prudent man would ordinarily take of his own property. Or, in another view; if common prudence required the defendants to guard the store more securely, or cause some person to sleep in it, and in such case the loss would not

have happened; or if the loss was occasioned by the defendant's mingling other property with that in question, which required it to be better guarded or secured, and for lack of such better care the whole was destroyed; or if the loss happened for want of due care and diligence; that in either case the defendants were liable. And the plaintiffs' counsel requested the judge to charge the jury according to these several views of the case.

The judge told the jury, that common carriers are liable in all cases of loss or destruction of the property which they carry, unless such loss or destruction be occasioned by the public enemies of the country, or the act of God, which last meant a destruction by lighting, or some other accident which no human foresight or prudence could guard against.(a) That if the goods in question were, at the time of the loss, in the defendants' hands as common carriers, to be transported for freight, there could be no doubt of their liability. They were not, however, received by the defendants as common carriers; but as the keepers of a public store-house; to be kept till orders should be given to send to Canada. That if the defendants were expected to transport the goods in their own boat, of which there was no evidence; yet their risk as common carriers had not commenced at the time of the loss; the goods being in the store-house awaiting the plaintiffs' orders.

That storing and forwarding merchants and wharfingers, who do not undertake to transport the property themselves, and do not receive a profit on account of the transportation, [*500] are not liable to the same extent as inn-keepers and common carriers.

Yet in all cases of bailment of property to a person who carries on a public business of receiving it into his custody, under his care for reward, it is necessary that a strict rule should be enforced against the bailee, to prevent fraud. Hence, when property entrusted to a warehouse-man, wharfinger, or storing and forwarding merchant, in the ordinary

(a) This substantially agrees with the definition given by Ld. Mansfield in *Eorward* v. *Pittard*, (2 T. R. 27, 33, 34.)

[*501]

course of business, is lost, injured or destroyed, the weight of proof is with the bailee, to show a want of fault or negligence on his part; or, in other words, to show the injury did not happen in consequence of his neglect to use all that care and diligence on his part, that a prudent or careful man would exercise in relation to his own property.(a) He is bound to guard against all probable danger; the common carrier against all possible danger; and there is no middle line or degree of vigilance between these two. That the question of negligence was for the jury; and perhaps no better way of determining* it could be adopted, than to inquire whether a prudent man, owning the property in question, would, with a full knowledge of all the facts, have entrusted it in the store-house, as this was left. If so, the defendants were not liable; otherwise they were.

That their liability did not depend on the question, whether a prudent owner of the silks and other dry goods, would have left them in the store-house exposed to thieves and without a guard. If there had been negligence in re-

(a) But *quere* of this. In *Harris* v. *Packwood*, (3 Taunt. 264,) which was the case of a special acceptance by a common carrier, but who yet was held liable for actual negligence, Lawrence, J., charged the jury that the *onus* of proving care lay with the defendant; but the court held otherwise, on a motion for a new trial; and that express negligence must be shown by the plaintiff. This case is understood as going that length by Abbot, C. J., in *Marsh* v. *Horne*, (5 B. & C. 322.) A similar case is reported in 1 H. Bl. 298, (*Clay* v. *Willan and others.*) In a note to the second edition of Jones on Bailments, (106, note (40),) Mr. Balmanno, the editor, remarks of *Clay* v. *Willan:* "In the above case no proof appears to have been adduced of *negligence*, or conversion of the parcel by the defendants or their servants; and it would have been inconsistent with legal principles, to have presumed that the defendants acted contrary to the trust reposed in them."

The distinction would seem to be, that when there is a total default to deliver the goods bailed, on demand, the *onus* of accounting for the default lies with the bailee; otherwise he shall be deemed to have converted the goods to his own use; and trover will lie; (2 Salk. 655;) but when he has shown a loss, or where the goods are injured, the law will not intend negligence. The *onus* is then shifted upon the plaintiff. (Id.) In the case of a common carrier, however, the rule is different. The law presumes against him in all cases, even of accident, until he shows the loss or injury to have arisen from the enemies of the state, or the act of God. (1 T. R. 33, per Ld. Mansfield.)

gard to these, the defendants might be answerable to the owner, unless he had agreed to leave them there at his own risk. On this branch of the case the question was, whether the potash and corn were in probable danger from being left with the silks.

The jury found for the defendants.

*J. A. Collier*, for the plaintiffs, now moved for a new trial. He did not insist much on the positions taken by the plaintiffs' counsel at the trial. But he contended that the defendants were to be considered in the light of wharfingers, who stand by the common law, on the same footing, as to liability, with common carriers. (*Maving* v. *Todd*, 1 Stark. Rep. 72; 5 Burr. 2827; *Isaack* v. *Clerk*, Moor. 841; 2 Stark. Ev. 337, Metcalf's ed.; Wheat. Selw. 301.) The counsel also referred to Wilson's specimen of codification of the law of carriers in South Carolina, (Pamphlet, p. 37, c. 1, s. 4,) which gives the common law of England, as understood in that state. That the defendants came within the definition of wharfingers, he referred to Jac. L. Dict. tit. Wharfingers.

He admitted that *Roberts* v. *Turner*, (12 John. 232,) was against the position taken at the trial, that a public storer of goods, for reward and for the purpose of forwarding them, is liable to the same extent as a common carrier.

*P. Gansevoort & H. Bleecker*, contra, insisted that the law of the case was truly given in the charge of the judge. That he was fully supported by the authorities in his rules of responsibility, both as to storing and forwarding merchants and *wharfingers. (12 John. 232; 2 Stark. Rep. 461; 8 Taunt. 443; 2 Esp. Dig. Gould's ed. 252; 2 Com. on Contr. 342; 4 Esp. Rep. 262; 19 John. 44; Peak. N. P. Cas. 114; 4 T. R. 581.) They said there is no distinction, in reason, between the case of a storing and forwarding merchant, and a wharfinger. Neither is like a common carrier, who is bound to more than ordinary diligence, upon grounds of policy applicable to him alone. The authority cited from 1 Starkie's Rep. 72, is a mere *nisi prius dictum*

[*502]

of Lord Ellenborough, going beyond the case before him and what Lord Mansfield said in 5 Burr. 2827, was evidently meant of one who engages in the double character of wharfinger and common carrier.

But suppose both to stand on the same footing of liability; we deny that the defendants could be considered wharfingers in respect to the goods in question. They were not acting in that character. The store stood upon their wharf, it is true; but this does not determine the question. The goods were not subject to the duty of wharfage till removed from the store, and placed on the wharf in a course of transportation. The plaintiffs were liable for the mere storage duty; and the defendants should be bound to nothing more than a corresponding liability on their part.

*Collier,* in reply. True, it is difficult to assign a good reason why a wharfinger should be liable as a common carrier. But the doctrine seems to be settled by the authorities.(a) It is equally difficult to show upon principle why an inn-keeper should be liable without negligence. Yet such is the settled law.

(a) The learned counsel was, perhaps, hardly warranted in taking it as settled, even upon English authority, that a wharfinger is liable to the same extent as a common carrier. The evidence of this, which he produced, is, what was said incidentally by Lord Mansfield, in *Ross* v. *Johnson*, (5 Burr. 2827,) and by Lord Ellenborough, at *nisi prius*, in *Maving* v. *Todd*, (1 Stark. Rep. 72.) Lord Mansfield said, " It is impossible to make a distinction between a wharfinger and a common carrier. They both receive the goods upon a contract. Every case against a carrier is like the same case against a wharfinger." The controversy was, however, upon the form of the action · as whether trover would lie against the wharfinger for stolen or lost goods or whether the action should have been case; and held the latter; and that trover would not lie. In *Mavin* v. *Todd and others*, the defendants were wharfingers and lighter-men; and the action was assumpsit, for goods destroyed by fire, while on their premises. "Ld. Ellenborough was of opinion that the liability of a wharfinger, whilst he has possession of the goods, was similar to that of a carrier; and he inquired whether the defendants had any case to the contrary." *Isaack* v. *Clerk*, (Moore, 841,) was trover for a pledge; and no question was made, nor anything said as to the degree of care incumbent on the bailee. The ground taken by Ld. Mansfield *that there is a contract*, applies to every bailee; and it is conceived cannot be the true reason why a common carrier is bound to the utmost diligence. His liability is

*[SUTHERLAND, J. But there is another difficulty in this case. Though the defendants had a wharf, it does not necessarily follow that they were wharfingers in respect to the goods in question. They had a store upon the wharf

ALBANY,
Oct. 1827.

Platt
v.
Hibbard.

founded in public policy; which will not allow him to set up a loss in despite of ordinary care; on account of the ease with which, in the course of his journey, far from the eye of his employer, and on the open highway, he can contrive pretended losses for his own benefit, but so apparently true as to be imposed on the witnesses, and on courts of justice as casualties. (Ld. Raym. 917, 18. Jon. on Bail, 104, 2d ed. 1 T. R. 33. 19 John. 46.) This is a reason which would seem no more applicable to wharfingers than to factors, warehousemen, or forwarding merchants, who are agreed not to be bound to greater diligence than all bailees who have a reward. (Ld. Raym. 918. 12 John. 232. 4 T. R. 581. 5 id. 394. Jon. on Bail, 2d. ed. 103.) To warrant the greatest strictness, there must be an undertaking *to carry* for a reward; and then, though the goods be left at a warehouse as one of the intermediate stages of the way, and accidentally burned at the warehouse, the undertaker to carry is liable; for his obligation continues. (*Forward* v. *Pittard*, 1 T. R. 27. *Hyde* v. *The Navigation Company*, &c., 5 T. R. 389.) And this would seem to be the true ground of the decision in *Maving* v. *Todd and others.* The defendants were not merely wharfingers, but lightermen, whose duty it was to convey the goods from their wharf in their own lighters, to the vessel in the river. The duty of carrier seems to have attached upon the goods being left on their wharf. It was not a mere duty of *custody*, but also of *feasance;* and the reward covered both, as much as in *Hyde* v. *The Naviyation Company*, &c. It was upon such a state of facts that Ld. Ellenborough laid down the obligation of simple wharfingers. His opinion underwent no revision, nor was it a subject of revision; for the case immediately took a turn against the plaintiff on another ground; and he was non-suited.

The section referred to in Mr. Wilson's project for a codification of the law of carriers, is equivocal; but it is conceived that he intended to lay down a rule applicable to those only who undertake the combined duty of *wharfingers and carriers.* The language of the learned writer is this: "Any hoyman, whether master or part owner, barge owner, *wharfinger*, ferry-man, or other person, who may carry goods for hire, or shall receive them to be carried for hire, shall be alike responsible as those who carry by land." Now if we connect the word *wharfinger* with the other words which I have put in italics, it makes out the case, not of a simple *wharfinger*, but of a carrier as understood in *Hyde* v. *The Navigation Company*, &c., and in *Maving* v. *Todd.* In the same sense, a warehouseman may be a carrier. (Vid. 4 T. R. 582.) If a man receive goods to carry, at his warehouse or wharf, this is but one mode of receiving a delivery as carrier; and the circumstance of taking a reward of storage or wharfage, should certainly not reduce his liability below what it would be on a delivery at his office, his dwelling-house, his inn, or even at his very vehicle of conveyance. In all cases, when the delivery is complete, the duty of carrier attaches, though the article never be removed

ALBANY,
Oct. 1827.

Platt
v.
Hibbard.

*in which the goods were deposited, not as a wharf, but a store. It seems to me the defendants are to be considered as warehousemen. No duty as wharfingers had attached to them.]

from the immediate place of delivery. (*Forward* v. *Pittard*, 1 T. R. 27.) If we separate the word *wharfinger* from the words *shall receive them to be carried for hire*, the section quoted from Mr. Wilson then supports the view taken by the counsel who relied upon it.

Mr. Wilson is the fairest of codifiers. He does not stop with the usual *tirade* against the common law and its professors; but offers a specimen, by following out which, everything, it seems, is to be made even more than mathematically plain and certain; and the labors, and the least assistance from counsel, superseded. Had Mr. W. made a digest of the common law of carriers, referring as he went along, to the principles and authorities upon which he reposed, he would have furnished a lucid exposition of that easy little practical subdivision. In this way he might have cleared the obscurity in which the section we have been considering is involved. Had he, in his happy way, told us of the policy upon which his carriers are holden to great and exemplary diligence, and illustrated his remarks by the English decision, which he undoubtedly had under his eye, he would not have left us in the dark upon the question whether a *simple wharfinger* is a *common carrier*. With the greatest deference, it seems to me there is a failure by Mr. W. in the very particular where all codifications of the common law must be wanting. That law is a practical science; and, to use Mr. W.'s own words, "so recondite and abstruse" as absolutely to require, not only such digests as Mr. W.'s, (with which it abounds,) but principle, definition and illustration in every possible way. Its operation must be seen. Not only the rules and definitions, but the experiments of the science, should be looked into, and the history of them preserved as perfectly as may be. After every thing that can be learned from those books which have been framed with a view of giving the best lights to the student, still he must ground himself in the business of the lawyer's office and of the courts, before he can apply his knowledge. Deny him this, and he is like the student in chemistry, vainly struggling to master his science without the walls of the laboratory. If many of those rights and duties which form the objects of legal regulation among a great and commercial people, are of themselves metaphysical and intricate laws, and the modes of enforcing them, will be so too in a corresponding proportion. Is the curt, abstract codifier qualified at once to introduce order, certainty and stability, into those regions where the mightiest intellect, the greatest experience, and the best intentions have been applied in vain for ages? Or is it so easy to resolve society into its original elements, and work out a new and perfect creation? But I do not understand the modern codifier as proposing this. He would take the common law as it is, and write it out in a new and improved form. He would clothe it in a more fascinating style. It is to become a matter of legislative belles lettres, which shall catch the ear like a song of Burns; commanding an universal

*[WOODWORTH, J. It cannot be that these defendants were liable as wharfingers; and it, therefore, becomes unnecessary to consider the distinction which you urge. Your argument goes to make every storing and forwarding *merchant in our cities wharfingers. It certainly can make no difference in principle, whether they receive goods into a store which happens to stand upon a wharf, or in the body of the city.]

ALBANY,
Oct. 1827.

Platt
v.
Hibbard.

[*506]

[SAVAGE, Ch. J. The attempt to fix the defendants in the particular character of wharfingers, as distinguished from warehousemen was not made at the trial; and there does not appear to be any count in the declaration charging them in that character.]

relish and acquaintance from the cottage of the peasant to the halls of our gentry. None are to be ignorant of any part of the law, in its theory or practice. Both the common and statute law are now sufficiently understood, for most practical purposes, by every individual interested, to apply them as a guide in his particular business, or official duty. But the codifier would place the man concerned in any of the ordinary subdivisions of labor, on a level with the most learned counsel. Even Mr. W., whose pamphlet is before me, flatters himself that the labors of the latter would, in one particular, be superseded, if the unprofessional reader would study his law of carriers. Now, to test his theory, by one instance among many which I perceive in his code, I propose he should submit his section 3, of chapter 3, to some intelligent farmer of his neighborhood, who shall study it, in connection with Mr. W.'s whole tract. It is this: "every common carrier shall be considered an insurer, and answerable for *inevitable accidents*, except the *act of God*, or the *enemies of the state*." The words in italics are not defined in Mr. W.'s code. The farmer must first look into the commercial law, where he is to learn the obligation of an *insurer*. His theology might teach him there was no such thing as *inevitable accident*, that all is *the act of God*; and if he should be turned over to Sir William Jones, he would there see the two phrases treated as synonymous. Nor could he find the technical nicety with which the codifier has discriminated, till he should consult 1 Term Reports, where Ld. Mansfield would make it plain by an illustration drawn from the riots of 1780. You could hardly drive him from the notion that a thief or a rioter is an enemy of the state, till you furnished him with a definition from international law. And after all, on a case arising the next day, upon this very section, he would retain the learned codifier for advice, and pay him generously for issuing process, settling the pleadings and evidence, and advocating his cause at the trial, &c., &c. Mr. W. will find himself beset with still greater obstacles at every step of his progress, from *common carriers* to *contingent remainders*. His difficulties will multiply in the regions of special

ALBANY,
Oct. 1827.

Ex parte
Beadlestone.

*Collier.* We suppose the count against them as common carriers sufficient to reach them as wharfingers; provided we show that the latter stand on the same ground with the former.

*The Court* were clear, that a case of wharfingers was not made out; and

SUTHERLAND, J., said, if that case had been made out, he could see no reason for making the defendants liable as common carriers. He declined, however, to decide this question; and

*The Court* agreed in considering the case as one of ware-housemen, who are not liable if they exercise ordinary care.

New trial denied.