### FLEISCHMAN, MORRIS & CO. v. SOUTHERN RY.

1. CARRIER'S LIABILITY FOR SAMPLE TRUNKS.—A carrier receiving trunks containing samples of merchandise, with some notice of their contents, should be held to same liability as for personal baggage. Rule of liability discussed.

2. IBID.—COURTS WILL TAKE JUDICIAL NOTICE of a general custom among carriers of passengers of receiving and transporting sample trunks as personal baggage.

3. CONSTITUTIONALITY OF A STATUTE not raised on Circuit will not be considered here, although raised by exception and argued.

4. CARRIER — BAGGAGE — SAMPLE TRUNKS — WAREHOUSEMAN. — Where trunks containing samples of merchandise are voluntarily received by a carrier an unreasonable time before the owner intends to take passage, the carrier is liable for their loss in its custody as warehouseman and held to ordinary care.

5. WAREHOUSEMAN.—Rule in this State as to proof of liability of warehouseman is, bailor makes out *prima facie* case by showing delivery to bailee and his refusal to return, and burden is on bailee to show he has not converted the property. Rule discussed.

Before KLUGH, J., Richland, July, 1906.   Affirmed.

Action by Fleischman, Morris & Co. against Southern Railway.   From judgment for plaintiffs, defendant appeals.

*Mr. E. M. Thompson,* for appellant, cites: *Trunks, containing samples of merchandise are not baggage at common law:* Moore on Car., 706; 41 L. R. A., 333; 148 U. S., 627; 10 Cush., 506; 98 Mass., 83; 6 Hill, 586; 9 H. L. Cas., 556; 10 C. B. (N. S.), 154; 13 *Id.,* 818; 73 Ill., 348; 29 Minn.,

160; 70 Cal., 169; 13 Int. Rev. Rec., 342; 62 Fed. R., 881. *Defendant not liable because it took charge of the trunks as an accommodation:* 64 Miss., 843. *Having no notice of contents of trunks, defendant is not liable as for baggage:* 1 McC., 446; 60 L. R. A., 848; 48 L. R. A., 120; 70 Cal., 169; 44 Ut., 325. *If the act of 1904 compels carrier to carry samples as baggage, it deprives the carrier of its property without due process:* 173 U S., 695; 61 Kan., 442.

*Mr. D. W. Robinson,* contra, cites: *Expectation of receiving and carrying a passenger is sufficient to take case out of the rule as to gratuitous bailee:* 71 S. C., 223; 74 S. C., 286; 99 Am. St. R., 371; 83 Am. Dec., 143; 54 Am. R., 319; 21 Wend., 354; 70 S. C., 338. *Liability of carrier commences when it receives the baggage:* 3 Ency., 560. *Carrier must give notice of intention to change liability to that of warehouseman:* 71 S. C., 224; 5 Ency., 281; 50 S. C., 138; 64 Miss., 844; 104 Ind., 310. *Sample trunks must be received as baggage:* 48 L. R. A., 117; 65 S. C., 509, 549; 70 S. C., 343; 3 Ency., 533; 17 Fed., 211; 2 Bail., 157, 421; 36 S. E., 202; 6 Ency., 262; 5 Ency., 233. *Burden was on defendant to show that it assumed responsibilities of warehouseman:* 50 S. C., 138; 71 S. C., 224; 64 Miss., 844.

March 8, 1907. The opinion of the Court was delivered by

MR. JUSTICE WOODS. This is an action for the recovery of the value of two trunks of sample shoes destroyed by fire in the station of the defendant at Jonesville, S. C. The plaintiffs recovered judgment and the defendant appeals, alleging error in the refusal to order a nonsuit, and in the charge to the jury. As no evidence was offered on the part of the defendant, the case is to be considered in view of these facts testified to by the plaintiffs' witnesses: C. C. Cooper, a traveling salesman for plaintiffs, who had been in the country selling shoes, on coming into Jonesville in the after-

noon, carried his two trunks in a private conveyance to defendant's station and took the trunks out. When he moved one trunk to the end of the station, and was in the act of moving the other to the same place, intending to leave them there, a negro porter came out of the station, and said, "Boss, we always lock the trunks up that are left here," and then rolled the trunks in. The evidence tended to show the station agent of the defendant observed the act of the porter, and made no objection. Cooper, the salesman, intended to leave Jonesville the next morning, on one of defendant's trains, taking the trunks with him, but was uncertain whether he would go towards Asheville or Columbia. His intention with respect to the trunks was not communicated to the agent. They were destroyed about 3 o'clock the next morning by a fire which burned the station. No evidence was offered as to the origin of the fire. The trunks were not represented to contain personal baggage, but on the contrary, there was evidence tending to show notice to the agent of the character of the contents when he allowed them to be placed in the station. The size of the trunks, four feet long and three feet high, indicated they would not be carried by a traveler to contain his personal belongings going through the country in a private vehicle. The salesman, Cooper, testified: "Q. What sort of trunks were they, what was the size of the trunks? A. If there is any member of the jury who has ever seen a salesman's shoe trunk, he knows. I do not know what the trunks are made of."

The motion for nonsuit, made on the ground that no other inference could be drawn from the evidence than that the defendant was a mere gratuitous bailee, and, therefore, not liable in the absence of proof of gross negligence, was properly refused; for as will appear in the consideration of the exceptions to the charge, the question whether the defendant held the trunks as a common carrier or a warehouseman at the time of the fire, was a question of fact for the jury.

The defendant's first request to charge raises the question of the degree of liability of common carriers for trunks of

samples taken by traveling salesmen with them for use in their business, without special notice to the carrier that they contain samples of merchandise. The request which the Circuit Judge refused was: "If the jury find from the testimony, if such testimony there be, that the trunks alleged to have been delivered to the defendant contained merchandise packed as baggage, then I charge you that the defendant could not be held responsible or liable for the loss or injury to the merchandise, except as a gratuitous bailee, unless its agent having control of the receipt of the baggage was informed or knew what was contained in the trunks." The cases in which the matter has been under review are cited in 6 Cyc., 668; *Humphrey* v. *Perry*, 148 U. S., 627; 37 L. Ed., 587; 48 L. R. A., 115; 4 L. R. A. (N. S.), 1035; 14 L. R. A., 515; and it will be found the proposition contained in the request has the sanction of many Courts of high authority. Nevertheless, we are unable to adopt it, because as we shall endeavor to show, it leaves out of view a custom of business adopted by the railroads, now firmly established, which Courts cannot refuse to recognize. Indeed, as has been remarked by another, the law as to the relation of carriers to trunks of samples carried by traveling salesman, is in a state of evolution; and we, therefore, feel free to adopt our own view untrammeled by the conclusions of other tribunals.

It is true, as a general proposition, a common carrier is not liable for merchandise, as distinguished from personal baggage, which a passenger undertakes to carry, as if it were personal baggage, without the consent of the carrier; and it may be this rule should be held to apply even when the agent agrees to receive the merchandise as baggage, if the traveler knows in doing so he is violating a rule of the company. *Weber Co.* v. *Ry. Co.*, 84 N. W., 1043.

Personal baggage is not carried free; the charge for carrying it is estimated, and included in the price of the ticket. The reason of the general rule that a traveler cannot take merchandise as baggage and hold the carrier liable, is that

the cost of carrying merchandise is not included in the passage money; and to allow it to be carried as baggage, and make the carrier liable for it as such, would be to sanction a fraud on the carrier in depriving it of its legitimate freight charges. But railroad companies themselves have chosen to modify this rule, for the advancement of their own business, by carrying the sample trunks of traveling salesmen as baggage, charging for the excess, when it with personal baggage is over a certain weight. It is true, there was no proof in this case of the custom, but the Court will take judicial notice of it. Courts do not require proof of the established business customs of the people whose affairs come before them; for, as has been well said, Courts will not profess to·be more ignorant than the rest of mankind. This custom of carriers as to salesmen's trunks of samples is as universal and as well known as the custom of checking ordinary baggage, and it would be as absurd for Courts to require proof of one as of the other. It does not seem material how such trunks with their contents are designated—whether as baggage or freight. The vital fact is, that the railroads with full knowledge of their character receive them for transportation, carry them with the passenger on their passenger trains, and undertake to deliver them at his destination. In doing so, the carriers themselves place sample trunks on the same footing as baggage, and as to such trunks and their contents, they must be held to the same liability. The General Assembly recognized this course of railroads in treating salesmen's samples of merchandise on the same footing as personal baggage in the act of February, 1904 (24 Stat., 379) , which provides: "That on and after the approval of this act by the governor, all common carriers of passengers in this State using steam as a motive power shall safely transport to the destination of any passenger personal baggage or sample trunks or sample cases, not to exceed two hundred pounds in weight, for any one passenger holding a ticket or paying ordinary passenger fare, free of charge for such personal baggage, sample

16—76

trunks or sample cases, and shall issue checks for such personal baggage or sample trunks or sample cases on request."

We do not discuss the question of the right of railroad companies to make this discrimination in favor of salesmen's sample trunks, because that question could be made only by one who claimed to be discriminated against and not by the railroad company. As we have endeavored to show, the plaintiffs' case does not depend upon the statute above cited. Its constitutionality was not drawn in question in the Circuit Court; hence, any expression of opinion on that subject, though suggested by appellant's exceptions and argument, would be gratuitous.

In opposition to this view of liability for sample trunks, it is said great hardship would result, in that the railroad companies might be held responsible for samples of jewelry and other articles of enormous value. The answer is, that this, like all other rules of law, is to be applied with the limitations required by common sense. A reasonable amount of jewelry, such as is ordinarily worn by persons in the same station of life as the passenger, is held to be included in personal baggage; but this does not mean that jewelry or other valuables worth thousands of dollars could be carried by one of immense wealth as ordinary baggage at the risk of the carrier, without notice to it, on the ground that such articles are worn and used as personal belongings by those of like station as the passenger. In such extraordinary cases the risk is out of all proportion to the average of compensation included in the ticket, and the carrier will not be charged with the intention to assume it. So, also, the carrier may be held to assume liability for trunks containing samples of ordinary merchandise, such as shoes, hats, dry goods, groceries, etc., carried with the passenger, on the ground that the carrier has voluntarily chosen to regard the transportation of such packages compensated for by the traveler's ticket, or to allow it to be paid for as excess baggage, the excess being counted by weight. But it by no means follows from this that the carrier is to be held

liable for articles of extraordinary value used as salesmen's
samples, the carriage of which all reasonable men know· is
attended by risk of enormous loss, suggesting the exercise
of unusual care.    The main element entering into the charge
of transportation in such cases is not weight or bulk, but
value; and the owner or his agent having the property in
custody must be charged with knowledge that the carrier
would not agree to transport it and assume the risk on the
basis of weight; and consequently the owner or agent must
in the exercise of good faith give notice of the contents
before placing it in the carrier's custody.    In this view, we
think the case of *Humphrey* v. *Perry*, 148 U. S., 627, and
other like cases, are consistent in result with the rule we
have laid down.  We lay no stress on the cases *Harzburg* v.
*Railway Co.*, 65 S. C., 539, 44 S. E., 75, and *Sonneborn* v.
*Railway*, 65 S. C., 502, 44 S. E., 377, where recovery was
had for damage to the contents of a salesman's trunks
checked as baggage, because the point here involved was not
made in these cases.

For these reasons, we think the first request of the defend-
ant was properly refused, and the second, third and fourth
exceptions should be overruled.

The defendant next submits the Circuit Judge erred in
refusing to charge the jury the following request: "If the
jury, from the testimony, if such testimony there be, find
that the trunks mentioned in the complaint were re-
ceived by the defendant, at its depot or station, not
for immediate transportation, but to be stored with-
out charge for the accommodation or convenience of an
intending passenger on some later train, and while so held
the trunks were destroyed by fire, then the defendant would
not be liable, unless the fire was caused by gross negligence
on the part of the defendant, and the burden of proving such
negligence would be on the plaintiff."

In *Battle* v. *Railway Company*, 70 S. C., 342, it was held
to be a question for the jury to determine whether the trunk
had been delivered to a railroad company and accepted by it

as baggage; but in that case the difference between the liability of a warehouseman and a common carrier did not arise. A traveler has the right to deliver his baggage a reasonable time before the departure of the train he expects to take, and hold the railway liable as a common carrier from such delivery. *Hickox* v. *Railway Co.*, 83 Am. Dec., 143 and note; *Wood* v. *Railway Co.*, 99 Am. St. Rep., 372, note; 76 Am. St. Rep., 899, note. But the manifestly just rule is held by unbroken authority to be that a railroad company does not assume the liability of a common carrier, but only that of a warehouseman for baggage received by it for an intended passenger for his own convenience and accommodation, at an unreasonable time before the departure of his train. What is an unreasonable time is usually a question of fact for the jury, and no request was made in this case for an instruction on this point. But assuming the time from the afternoon until the intended departure the next morning was an unreasonable time, the defendant would still hold the trunk as a warehouseman and be charged with ordinary care. The theory upon which this request and the motion for a non-suit were based is, that in such circumstances the railroad company is only a gratuitous bailee and chargeable only for gross negligence. But in such circumstances, when trunks are voluntarily received from an intending passenger, and no objection is made to their retention until his departure on the train, as was the case here, we think both reason and authority will hold the railroad company as a warehouseman to ordinary care. 6 Cyc., 670, and authorities; 97 Am. St. Rep., 102, note; 64 Am. St. Rep., 290, note; *Rossier* v. *Ry. Co.*, 91 S. W., 1018. The request was, therefore, properly refused. As we have endeavored to show, the defendant held the trunks either as a common carrier or as a wareshouseman, and even as a warehouseman was held to ordinary care. The law insisted on by the defendant as to the care required of a gratuitous bailee was, therefore, inapplicable.

There was no request to charge as to the duty of a warehouseman to observe only ordinary care. The motion for a non-suit was made, however, not only on the ground of failure to prove gross negligence, but failure to prove any negligence. Even if the proof admitted no other inference than that the defendant as to these trunks was not a carrier, but a warehouseman, and therefore, chargeable with ordinary care, there was not such a total failure on the part of the plaintiff to make out a case as would have justified a nonsuit. The plaintiffs proved the destruction by fire of the station in which the trunks had been left; and Cooper, the plaintiffs' agent, testified when he got to the fire "the depot was fastened; the doors to the waiting room were fastened. I went to the door to get the trunks out, and had it not been locked I could have gotten them out."

The proof being that the goods were destroyed by fire and not converted, we come to the question of the burden of proof as to negligence or due care in an action by the owner of the property against the warehouseman having it in charge. Courts of last resort in this country have either expressly followed or have been influenced by the great authority of Judge Story, who thus states the rule which he rests on the early English cases: "The question may here arise, as in many other cases of bailment, on whom lies the burden of proof of negligence, or of repelling it. With certain exceptions, which will hereafter be taken notice of, as to inn keepers and common carriers, it would seem, that the burden of proof of negligence is on the bailor; and the proof merely of the loss is not sufficient to put the bailee on his defense." Story on Bailments, sec 410. After a review of many cases, Mr. Freeman says, in the note to *Schmidt* v. *Bland,* 24 Am. Dec., 153: "The doctrine deducible from these authorities seems to be this: A bailor seeking to recover from a warehouseman for the non-delivery of goods, or an injury thereto, must prove negligence. When he shows that the goods were not delivered on demand, or were delivered in a damaged condi-

tion, he has made a *prima facie* case. If the defendant accounts for the non-delivery or injury by showing that the goods were stolen, or were lost or damaged by fire, or in any other manner consistent with the exercise of ordinary care on his part, the plaintiff's *prima facie* case is overcome, and he must prove positive negligence occasioning the loss."

It would needlessly lengthen this opinion to attempt a criticism of the numerous cases. They will be found collated in Hail on Bailments, secs 30 and 140, and in other text-books, and in annotated cases on the subject. Examination of the authorities will disclose expressions of doubt and dissatisfaction concerning the rule, that as soon as the bailee proves loss or injury by fire or other means, the burden then rests on the bailor to prove negligence.

The course of the decisions in New York will serve to illustrate the unsatisfactory state of the law in this country. In *Platt* v. *Hibbard,* 7 Cow., 497, Judge Walworth, on the Circuit, laid down the rule that where property entrusted to a warehouseman "is lost, injured, or destroyed, the weight of proof was with the bailee to show a want of fault or negligence on his part." Subsequently in *Clark* v. *Spencer,* 10 Watts, 335, the rule was held to be established by authority that the bailee discharged himself by proof of loss and the manner of loss, unless the bailor should prove negligence in allowing the loss to occur. The Court clearly indicated it followed this rule only because compelled by authority, and expressed regret that the rule laid down in *Platt* v. *Hibbard* was not the law. In the much later case of *Wintringham* v. *Hayes,* (N. Y.) 38 N. E., 999, the Court says: "While it is true, as a general proposition, that a bailor charging negligence on the part of the bailee rests under the burden of proof, yet often times slight evidence will shift the burden to the bailee. In an action against a bailee for loss or damage to goods by accident, proof of nature of the accident may afford *prima facie* proof of negligence. *Russel Mfg. Co.* v. *Steamboat Co.,* 50 N. Y., 121. In the case at bar, if the defendant, in support of his counter

claim, is able to prove the condition of the yacht when delivered to plaintiff, the nature of the subsequent injuries she sustained, and that they were not the result of ordinary wear and tear, he will have made out a *prima facie* case, and the burden of proof will be shifted to the plaintiff, who, as bailee, had the yacht exclusively within his control, and should be able to show the manner in which he discharged his contract obligations in the premises." The conflict of authority and the unsatisfactory state of the law elsewhere is alluded to only to make it clear that the rule established in this State by *Wardlaw* v. *Railway Co.*, 11 Rich., 337, and followd in *Brunson & Boatwright* v. *Railway Co., ante,* 9, is not opposed to any well defined or straight-flowing current of judicial thought in this country.

The rule in this State as indicated by the cases above referred to is, that the bailor must prove delivery to the bailee and his refusal to return as required by the contract of bailment. The burden is then on the bailee to prove that he has not converted the property, and this he may do by showing its loss and the manner of its loss; but by the manner of loss is meant not only the isolated fact of destruction by fire, or loss by theft or otherwise, but the circumstances connected with the origin of the fire or other cause of loss or injury as far as known to the bailee and the precautions taken to prevent the loss or injury. From these facts, coupled with any testimony on the subject the bailor may introduce, it is for the jury to say whether the bailee was negligent. This rule is entirely reasonable. The facts surrounding the loss, particularly the precautions taken against it, are usually known to the bailee or ascertainable by him. On the other hand, the owner of the property cannot be supposed to know the details of a warehouseman's business, for he is often hundreds of miles away. With the great modern development of the warehouse business, we venture to think the injustice of the rule which exempts a warehouseman from responsibility to the owner on the bald proof of loss or injury to the goods by fire, by theft, or other-

wise, will become more and more apparent. In most cases, to require the owner to assume the burden of showing that the fire or theft was due to the lack of ordinary care, is to impose an impossible task and place him more than ever at the mercy of the warehouseman. We are satisfied, therefore, to adhere to the somewhat exceptional rule laid down in this State, notwithstanding the great number of opposing authorities in other jurisdictions.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.