## 9340

### DAVIS v. ATLANTIC COAST LINE R. CO.

#### (88 S. E. 273.)

1. CARRIERS—CARRIAGE OF PASSENGERS—BAGGAGE—RECEIPT.—Where ordinary passenger's baggage in trunks is accepted by a carrier and a check issued, the check is only *prima facie* evidence of the receipt of the trunk by the carrier; nor is the situation different where the baggage consists of drummer's trunks.

2. CARRIERS — CARRIAGE OF PASSENGERS — BAGGAGE — RIGHTS OF PASSENGER.—The mere fact that a rule of a carrier required that a check be attached to baggage if excess charge was paid thereon and that no such check was attached to the baggage involved would not defeat the right of plaintiff to demand his baggage without paying excess, if, in fact, he had already paid the charge and the check had not been attached.

3. CARRIERS — CARRIAGE OF PASSENGERS — BAGGAGE — DUTIES OF PASSENGER.—Where there is a dispute between the carrier and the passenger as to payment of excess baggage fare at receiving station, it is the passenger's duty to make a full explanation of his claim and of the circumstances leading thereto to the carrier.

4. TRIAL—QUESTIONS FOR JURY—QUESTIONS OF FACT.—Where there is direct conflict in the evidence as to a question of fact, the jury is the sole judge thereof.

5. CARRIERS—PASSENGER'S BAGGAGE—DETENTION—PUNITIVE DAMAGES.—Where a passenger fully informs the agents of the carrier as to the reasons for his refusal to pay excess baggage fare, and the fare had already been once paid, but the agents without inquiry hold the baggage for payment of the charges, the jury might find punitive damages.

6. CARRIERS — PASSENGER'S BAGGAGE — ACTIONS — EVIDENCE — ADMISSIBILITY.—In a passenger's suit for the alleged wrongful withholding of his baggage by the carrier, evidence that at a later time than the transaction in suit a similar occurrence as to payment of excess fares was observed was inadmissible as immaterial and irrelevant.

Before PRINCE, J., Marion, April, 1915.    Affirmed.

Action by M. W. Davis against the Atlantic Coast Line Railroad Company.    Judgment for plaintiff, and defendant appeals.

The exceptions were as follows:

1. Because his Honor, the presiding Judge, erred, it is respectfully submitted, in refusing to direct a verdict for the

defendant on the cause of action based upon wilfulness and in refusing to grant a new trial, on the following grounds:

First. That there is no proof of any wilful or wanton conduct on the part of the defendant which would warrant a verdict for punitive damages.

Second. That the entire proof shows that the acts of the railroad employees were nothing more than an honest effort on their part to enforce the provisions of the statute laws of the State, and the rules of the railroad commission prohibiting discrimination against different passengers in the carriage of baggage.

2. Because his Honor erred, it is respectfully submitted, in charging the jury as follows:

"Now, Mr. Foreman, I charge you that it is the duty of the agent in receiving baggage for checking—the receiving agent—to ascertain under the rule put in in this case the weight of the baggage for himself. But if he chooses to do so he may accept the passenger's statement; but that would be a breach of the rule when he does. But, Mr. Foreman, it is the receiving agent's duty to collect this excess fare for transporting a trunk at the time he checks it; and if he checks a trunk the very fact of its being checked is *prima facie* evidence that the law has been complied with; that the excess has been paid. So when a party presents a check issued by the railroad company at a point of destination and calls for a particular trunk, the very fact that he has that check in his possession and presents it raises the *prima facie* presumption that he has paid for all excess due on that particular trunk. It is not a conclusive presumption; it may be overcome by testimony, but it casts upon the railroad who disputes the payment of the excess, if there be excess, the burden of showing by the greater weight of the evidence that the excess has not been paid. In other words, the railroad must satisfy the jury by such evidence as would overcome, by such weight as would overcome the *prima facie* presumption that the excess baggage had been paid, by rea-

son of the fact that the passenger had in his possession a check calling for that particular piece of baggage."

"I charge you that under rule 19 of the railroad company, put in evidence in this case, that the *prima facie* presumption is that where the railroad checks baggage that the excess has been collected by the receiving agent of the railroad checking it. That is merely *prima facie* presumption, not an irrebuttable presumption. It may be overcome by evidence of such weight in the judgment of the jury as would overthrow the presumption arising from the mere fact that it had been checked. If you find the plaintiff did have a check for his baggage and presented that at Marion and the railroad withheld his baggage because of the claim that the excess had not been paid, then I charge you that the burden is on the railroad company to overcome the presumption arising from the mere fact of having the checks by testimony sufficiently strong for that purpose. Failing to do that, the presumption is that the plaintiff paid the excess baggage or he would not have had the checks."

In that: (a) Under the rule of the defendant company introduced in evidence, where excess charges are collected by the forwarding agent, the same must be plainly indicated on an excess baggage check, and the uncontradicted evidence in this case was that the plaintiff's checks for the baggage in question were ordinary checks, and did not show that any excess charges had been paid, and, therefore, there was no presumption that such charges were paid by the plaintiff to the forwarding agent.

(b) Under the rule of the defendant company introduced in evidence, it was the duty of the agent at the point of destination to weigh all baggage when in doubt as to whether same is more than free allowance, and if found overweight and the forwarding agent has not assessed proper excess charge, to collect proper charges; hence, the presentation of an ordinary check showing no payment of excess

creates no presumption that the excess charges were paid to the forwarding agent.

(c) The plaintiff's right to the transportation of the baggage in question did not arise out of the ordinary contract of passage made by the payment of his railroad fare, but arose out of a special contract for the transportation of baggage in excess of the amount required by law to be carried free of charge, and, therefore, the burden was upon the plaintiff to prove compliance by him with the special contract and the payment of the excess charges required by said special contract.

(d) It was the duty of the agent of the defendant company at the point of destination to comply with the company's rule, introduced in evidence, and collect the excess charges pursuant to the said rule, the same being in accordance with the rules of the railroad commission and the statutory law of the State; and the failure to comply with said rule of the company would be a violation of the statutory law of the State and the rules of the railroad commission prohibiting discrimination among different passengers in the transportation of baggage.

3. Because his Honor erred, it is respectfully submitted, in charging the jury as follows:

"The duty of the agent of the railroad company is to heed the reasonable explanation of the passenger, not only as to the rights of personal transportation, but to his right to the transportation of his personal property, and any reasonable explanation they are bound to heed, to the extent that if they go forward and act in contravention of the reasonable explanation of the passenger they do it at the railroad's risk, if it should turn out that the passenger was right. Then the railroad would be wrong, and the railroad must pay the damages of the result. To that extent they must heed the reasonable explanation of the passenger. Now, if there is opportunity to investigate, they must investigate

and find out whether or not the passenger's statement is correct."

In that: (a) The said charge was irrelevant to the issues in the case, inapplicable to the evidence, and tended strongly to mislead the jury to the prejudice of the defendant, because there was no evidence that the plaintiff gave to the agents of the railroad company any reasonable explanation whatever as to why the checks presented by him for the baggage in question were ordinary checks and showed no payment of excess charges.

(b) The charge was a charge on the facts plainly indicating to the jury that plaintiff had offered a reasonable explanation.

(c) There was no evidence that the defendant company did not make such investigation as was possible in the circumstances.

4. Because his Honor erred, it is respectfully submitted, in charging the jury as follows:

"I charge you, Mr. Foreman, that the check for a particular piece of baggage merely is the evidence of the passenger's right to demand that baggage and the passenger is not bound to examine the check; if he has made a contract with the railroad company to transport his baggage from one point to another he is under no obligation to examine the check to see whether or not it is right. He had the right to assume that the railroad agent had done his duty and he had given him such check as was right under their contract. The Supreme Court of this State has passed on that question and has laid down the law as follows: Quoting from a New York case the Court says: 'In the case of *Isaacton* v. *Railway,* 94 N. Y. 278, which was very similar to this case, the Court said: In this case the request to check over the Mobile route was made to the baggage-master and assented to by him and he assumed to give checks in accordance with the request. This constituted, we think, an agreement binding on the company, and unless the plaintiff's omission to

examine the checks was contributory negligence, we are of
opinion that the nonsuit was erroneous.    The primary pur-
pose of giving the passenger a duplicate check is to enable
him to identify and claim his baggage at the end of the
route.    It has never, we think, been regarded as embodying
the contract of carriage, but only as a voucher or token for
the purpose mentioned.    (See *Quimby* v. *Vanderbilt,* 17 N.
Y. 306; *Van Buskirg* v. *Roberts,* 31 *Id.* 661; *Blossom* v.
*Dodd,* 43 *Id.* 264; 3 Am. Rep. 701; *Rawson* v. *Penn. R. R.
Co.,* 48 N. Y. 212.)    The plaintiff had a right to repose
upon the representation of the baggage-master, without
examining the check.' "

In that: (a) The said charge was irrelevant to the issues
in the case, inapplicable to the evidence and tended strongly
to mislead the jury to the prejudice of the defendant, because
the evidence clearly shows that the plaintiff knew the checks
given him by the forwarding agent of the company were not
excess baggage checks, and did not show the payment of
excess baggage charges, while the principle laid down by the
Court applies only to a case where a party does not examine
the check given him, and it transpires that such check was
not the kind that should have been given him under his con-
tract; and, further, does not apply to a special contract for
the transportation of baggage exceeding in weight the
amount required by law to be carried free of charge.

(b) While the possession of a duplicate check enables a
passenger to identify and claim his baggage at the end of the
route if there are no charges due thereon, the possession of
an ordinary check which does not show the payment of
excess charges affords no presumption that the excess
charges were paid, when the party holding such check knew
that if he had paid the excess charges he was entitled to a
check showing the payment of same.

5. Because his Honor erred, it is respectfully submitted,
in refusing to permit M. V. Orr, agent of the defendant com-
pany, at Marion, S. C., the point of destination, to testify

that he reported to counsel of the defendant company that the baggage in question had come through his office since the institution of this suit without the excess checks, in that, the plaintiff testified that his trunks had gone through on other occasions without the excess checks without being "held up," and the testimony offered by the defendant would have tended to show that reason for this occurrence and the motives of the plaintiff in instituting this suit.

*Messrs. L. D. Lide* and *Henry E. Davis,* for appellant, cite: *As to check:* Civil Code, sec. 3264; 78 S. C. 304; 3 A. & E. Enc. of L. (2d ed.) 580; 7 Rich. L. 158; Moore Carriers 721.   *Excess baggage:* 6 Cyc. 669; 159 N. Y. 461; 6 Cyc. 675.   *Charge:* 77 S. C. 182.   *No wilfulness:* 69 S. C. 444.   *Duty to explain:* 85 S. E. 167.

*Messrs. L. M. Gasque* and *A. F. Wood,* for respondent, cite: *As to baggage:* Civil Code, secs. 3263, 3264; 76 S. C. 241.   *Punitive damages:* 76 S. C. 198; 74 S. C. 377; 88 S. C. 425; 89 S. C. 432; 90 S. C. 373.   *Charge:* 88 S. C. 426; *Check:* 77 S. C. 184; 41 S. C. L. —; 7 Rich. 158; 78 S. C. 305, 306; 76 S. C. 14 and 247; 73 S. C. 291; 92 S. C. 101; 99 S. C. 424.   *Mistakes of company's agent:* 88 S. C. 421. *Charge:* 71 S. C. 444; 88 S. C. 421; 89 S. C. 432.   *Relationship of plaintiff to defendant:* 51 S. C. 150; 81 S. C. 271.   *Charge not on facts:* 65 S. C. 542.

March 17, 1916.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

Action for the denial of the plaintiff's right to have possession of his trunks.   Verdict for the plaintiff for $900 punitive damages and $100 actual damages, the latter reduced by the Circuit Court to $25.   Appeal by the defendant.

History: The plaintiff is of middle age, resides at Marion, and has traveled as a commercial salesman for 19 years. He went from Walterboro to Marion, over the defendant's lines, and carried two "drummer's trunks" with him. The trunks confessedly weighed in excess of the 200 pounds free allowance for such baggage; in avoirdupois the excess was 200 pounds, and for that the plaintiff was due to pay the defendant $1.70. The plaintiff and trunks reached Marion on Saturday, and the trunks remained in the station house there nine days uncalled for. At the end of that period of time the plaintiff essayed to go from Marion to Columbia, and he presented the checks he received at Walterboro and his mileage book and requested that the trunks be rechecked to Columbia. The baggage agent at Marion demanded payment of excess fare on the trunks from Walterboro to Marion, which the plaintiff declined, and thereout this suit arose.

The appellant has argued three questions, and we shall discuss them rather than the exceptions, for they embody the exceptions; but the exceptions may be reported. The appellant's three postulates are these:

(1) The presiding Judge erred, it is respectfully submitted, in holding that the possession of an ordinary check is *prima facie* evidence that the excess baggage charges have been paid.

(2) The presiding Judge erred, it is respectfully submitted, in refusing to direct a verdict for defendant as to punitive damages, and in his charge to the jury relating to such damages.

(3) The presiding Judge erred, it is respectfully submitted, in the exclusion of certain testimony.

These in their order:

1. The testimony tends to show, and there is no difference about it, that on trunks like these there are sometimes put, if not generally put, two sorts of checks—one the ordinary paper model issued to a passenger who carries baggage;

the other an excess check of a different model from the ordinary baggage check. The excess check indicates on its face the payment of the excess fare, and possibly the amount of it. It is not clear from the testimony if a duplicate of the excess check is furnished to the passenger, as is done in case of an ordinary baggage check. Rule 19, hereinafter set out, is silent on the subject. The Court asked Orr: "Does the check given to the passenger show whether the excess has been paid or not?" and the witness answered, "Yes, sir; it does, and possibly the amount." But it is not plain from this answer what check was referred to, the ordinary check or the excess check. The plaintiff testified, "I have seen checks that show excess fare, and they generally put them on." The Exhibit B, which sets out the form and contents of the excess check, indicates that there was issued on it a "strap check," and a "duplicate check," presumably one for the trunk and one for the passenger.

The rule of the company on the subject of excess checks is as follows:

"(19) *Weighing Baggage and Collecting Excess Charges.* —Agents must not accept statements of passengers as to weight of their baggage. Unless agent is positive the weight of a passenger's baggage is within the regulation allowance, he must weigh it, and collect proper excess for all overweight. The amount collected must be plainly indicated on the excess baggage check. Should an agent forward baggage weighing in excess of the free allowance without making proper collection, he will be charged with the amount he should have collected. Receiving agents will weigh all baggage when in doubt as to whether same is over free allowance, and if found overweight and forwarding agent has not assessed proper excess charge, collect proper charge."

In the instant case, without controversy, there was issued to the plaintiff at Walterboro only the ordinary baggage check, with no markings on it of excess weight or payment of money. There is no evidence that the plaintiff knew of

the rules of the company. The plaintiff testified that at Walterboro he paid the agent $4.50 for an ordinary passenger ticket from that point to Marion, and $1.70 excess fare on his trunks for the same journey, and that the agent issued to him the two ordinary baggage checks which he presented at Marion. The agent at Walterboro swore to a totally different transaction. He said the plaintiff was accompanied by a lady; that he presented a South Carolina mileage book and bought also a cash ticket from Walterboro to Marion; that he presumed the two were traveling together, and without looking at their baggage he issued to them two duplicate checks, presumably one for the plaintiff and one for the lady, and a clerk put the originals on the trunks; that plaintiff gave the cash ticket to the lady; that the witness did not see the trunks and did not ask if there was any excess, because he did not think there was any. The plaintiff flatly denied this account of the transaction. The charge of the Court was made with reference to this testimony, and the issues of fact made by it.

If the trunks had been ordinary passenger's baggage, then the check that was issued would have confessedly constituted only the *prima facie* evidence of the receipt of the trunk by the defendant. *Dill* v. *Railroad,* 41 S. C. L. (7 Rich. Law) 158, 62 Am. Dec. 407. The case is not altered that the trunks were "drummer's trunks." *Fleischman* v. *Railroad,* 76 S. C. 237, 56 S. E. 974, 9 L. R. A. (N. S.) 519. But about the custody of the trunk there is no issue; the carrier admits the receipt, the carriage, and the delivery of the trunk at Marion.

The issue here is: Was the excess fare paid? Manifestly, if as a fact it was paid, then checks cut no figure in the case. If it be true, as the carrier contends for, that by rule of the company and by custom of the company there ought to have been put on the trunks an excess check, and that its absence is *prima facie* evidence of nonpayment (and upon that we need express no opinion), yet, if

that was not done, and if nevertheless the plaintiff did pay the excess fare, then the fact must overcome the presumption; that is to say, the rights of people are not always dependent upon appearances.

The Court charged the jury that "the plaintiff has got no case unless he paid that excess for transportation of his baggage." It would be unpardonable to conclude that, even though a passenger had paid his excess, the absence of paper evidence of it, in a case like this, should defeat his right not to pay a second time. The *prima facies,* therefore, went out of the case, and the bald issue was made, independent of checks: Did the plaintiff pay the excess at Walterboro? The plaintiff did not rest upon the effectiveness of a check to fix his right. He testified in the first instance to a transaction he saw to fix his right; he testified to payment.

2. Upon the second issue, that of the allowance of punitive damages, we also concur with the Circuit Court. There is no need to repeat the testimony before recited, though it is relevant to the issue of law now considered.

3 The theory of the defendant was, as testified to by the witness, Kirton, the Walterboro agent, that the plaintiff had gotten his trunk carried through by a false pretense. That was the theory of one of the appellant's counsel; for in his oral argument before this Court he characterized the plaintiff as a "dead-beat," and in the printed argument it is said the plaintiff had "the ineradicable disposition to seek an advantage against the defendant company." The unvarnished issue for the jury was: Did the plaintiff consciously use, to get the trunks through without the payment of excess fare, a mileage book for himself and a cash fare ticket for a lady who merely happened to be going the same route, or did he buy a cash fare ticket for himself and pay the excess fare on his trunks? It might have been asked what legal right did the carrier have to charge excess if the two trunks went through, as they say, on two paid for passenger fares.

The appellant's counsel further contend that it was the duty of the plaintiff at Marion to make a true explanation to the defendant's agents, or at least to give some reasonable account of the transaction to guide the defendant's servants in their action.   We think that is true, though that issue was not made before the trial Court.   But the testimony on this particular phase of the case is not all one way; it tends to sustain the view of both sides.   So far as the record goes, the plaintiff was not asked on the direct examination whether or not he had stated his side of the case to the agents at Marion; he testified directly, "I don't owe you any excess from Walterboro, and won't pay it."   He further testified directly that one of the agents said "there was nothing on those checks to show that the excess had been paid," and that the witness answered, "That is none of my business."   On the cross-examination the plaintiff was not asked if he had told the agents at Marion the true transaction.

The witness, Orr, testified directly that the plaintiff refused to pay excess at Marion, "on the ground that the agent at Walterboro checked the baggage and gave me the checks," and that the witness, Orr, then replied, "If that is the only reason you have, we will have to insist that you pay these charges;" and the witness further testified that Davis said, "I have other reasons which I refuse to give."   On cross-examination Orr told plaintiff's counsel, "Mr. Davis absolutely did not tell me that he had paid the excess."

The witness, Andrews, testified: "I asked Davis did he pay any excess on them.   He never told me whether he did or not."   On the reply the plaintiff was asked this question: "Q. Mr. Davis, it has been testified here by Mr. Orr and Mr. Andrews that you refused to say whether you had. paid the excess or not, and that as you went out you said: 'I have other reasons which I refuse to give,' is that correct? A. Not a word of truth in it."   Had the plaintiff testified in chief about this, a reply would not have been necessary.

Thus the square issue of fact was made whether Davis did tell the agents that the excess had been paid.  It may be Davis did not tell them; it may be he did. Of the truth the jury, which knew the witnesses was and is the only judge.

If Davis did inform the agents of the true facts, if they nevertheless without further inquiry from reliable sources did hold the trunks and exact the excess charges, and if the excess charges had been in fact paid, and if the theory of the defendant's servants was that the plaintiff's actions had been in bad faith, and they were not, then the jury might find punitive damages.  All these matters were put in issue.  The learned Judge, who saw the witnesses, had the power, and it was his duty, to set aside or to reduce the verdict had it been manifestly wrong.  He did neither, and we concur in his action.

3. The third postulate of the appellant has reference to the exclusion of certain proffered testimony of the witness, Orr.  On the redirect examination he was asked this question: "It has happened since on one particular occasion that Mr. Davis' baggage came through without the excess checks.  This was since this suit was commenced.  Q. You reported it to the counsel of the company?  (Objected to, and objection sustained.)"

The printed argument of counsel is:

"Indeed, it was a most convincing circumstance, not only upon the question as to whether plaintiff paid the excess in the case at bar, but also to show the ineradicable disposition of the plaintiff to seek an advantage against the defendant company."

We think the testimony was plainly irrelevant and incompetent.  The answer to the question would have raised other and independent issues; in fact, another case of like import as the one at bar.

We are of the opinion that the judgment below must be affirmed.

It is so ordered.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS and FRASER, concur in the opinion of the Court.

MR. JUSTICE HYDRICK concurs in affirming the judgment for actual damages, but thinks the judgment for punitive damages should be reversed.